Carl Stanley TURNER *v.* STATE of Arkansas

CR 96-93                                                926 S.W.2d 843

Supreme Court of Arkansas
Opinion delivered July 1, 1996

*Jim Petty*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Carl Stanley Turner was convicted of burglary and attempted rape. He was sentenced as a habitual offender to terms of 30 years and 50 years, to be served concurrently. Fines of $10,000 for each charge were also assessed. He appeals on four grounds, none of which has merit. We affirm the judgment.

The facts surrounding the convictions are garnered from the jury trial. On Friday night, May 12, 1995, Alexandra Williams, a fourteen-year-old, was home alone with her mother, Deena Ann Darden, in Searcy. She testified at trial that she stayed up late watching television and then went to bed in her room. Early Saturday morning, she awoke and felt someone brushing against her. She first thought it was her boyfriend who was coming over at 10:00 that morning but then realized it was not. She turned and looked into the person's face and recognized Carl Turner, whom she had known for about two years. In fact, he was her boyfriend's uncle. When she first saw Turner, Alexandra noted that he was wearing boxer shorts and a jacket with a hood over his head. She also noticed that he smelled of alcoholic beverages. Alexandra testified that she looked at her clock and saw that it was six o'clock in the morning.

Alexandra then related that Turner put a knife to her throat and told her to be quiet. She was crying and she pleaded with Turner, but he threatened to cut her throat if she was not quiet. She

testified that Turner told her to pull down her underwear so that he could have sex with her. After she said "no," she stated that he pulled the knife away from her and started to get on top of her. As soon as the knife was far enough away from her throat, she jumped up and began screaming for her mother. Turner's reaction was to get up and walk out. Alexandra rushed into the hallway to tell her mother what had happened. Turner was still in the house and was fumbling with the door knob, trying to get out.

Deena Darden testified that after she was awakened by her daughter's screams, she ran to her daughter's door, where Alexandra met her. Darden turned and saw a man trying to unlock the back door to get out but that he was not moving in a hurried fashion. Though he tried to hide his face, she ultimately recognized him as Carl Turner. Alexandra then told her, "Carl tried to rape me." Darden ran to get her gun from her bedroom, and when she returned Turner was attempting to leave through her front door. He left, and Darden called 911. Police officers from the Searcy Police Department arrived a few minutes later.

The 911 tape was played for the jury. On cross-examination, Darden admitted that she had previously told Searcy police officers that the man she saw in her house was Carl Turner. She further testified that she told the 911 operator that "Polli Foo" (Turner's street name) had come through her window, though that name could not be heard on the 911 tape.

The police report by Searcy Police Officer Bob O'Brien stated that Alexandra identified Turner by his voice but not that she identified him visually. It also stated that Alexandra had known Turner a long time. When Alexandra testified at trial that she recognized Turner's face, Turner did not object to this testimony at that time. Rather, he waited until after the State had rested and his motion for directed verdict had been denied to raise the issue. He then moved for a mistrial based on the State's failure to inform him that Alexandra had recognized Turner's face. That motion was denied.

Turner's defense was a partial alibi presented by several friends and his brother for his whereabouts during early Saturday morning. Turner himself took the stand and denied that he was the culprit. Before his cross-examination by the State, a hearing was held to address whether evidence of prior convictions for attempted sexual

abuse in the first degree and burglary could be used against him for impeachment purposes under Arkansas Rule of Evidence 609. Counsel for Turner argued that the burglary and criminal attempt to commit sexual abuse were too prejudicial under Rule 609 because the burglary conviction mirrored the current charge before the jury, and the attempted sexual abuse conviction was unusable as a crime of a sexual nature. The trial court ruled that the prejudicial effect of the convictions was not enough to outweigh the probative effect of impeaching Turner through the use of those convictions. The court ordered the prosecuting attorney not to go into the substance of those convictions and agreed to give a cautionary instruction once the prior convictions came into evidence.

On cross-examination by the State, Turner admitted that he had prior convictions for burglary and felony attempt to commit sexual abuse in the first degree, but he argued that in those cases the trial court had misled him. Immediately following that admission, the court instructed the jury to use this evidence only for the purpose of judging Turner's credibility and not as evidence to determine his guilt.

Following the jury trial, the verdicts of guilty, and the sentences, Turner moved for a new trial on grounds that "he was prejudiced by evidence which was submitted against him which had not been furnished to him before trial despite his having filed [a motion for discovery]." He specifically complained that Officer O'Brien's report showed only that Alexandra could identify his voice. It said nothing about the fact that she visually identified him. Turner expressly requested a hearing on the matter. The trial court denied the motion for new trial without a hearing and concluded that the State had not violated the applicable discovery rule, Ark. R. Crim. P. 17.1, because the rule does not require that a defendant be informed of all possible testimony a witness might give.

## I. Rule 609

Turner first advances the argument that the trial court abused its discretion by allowing impeachment for the prior crimes of burglary and attempted sexual abuse.[1] Rule 609 of the Arkansas

---

[1] Turner actually had three prior felony convictions for attempt to commit sexual abuse, burglary, and theft, and he was sentenced as a habitual offender accordingly.

Rules of Evidence permits the admission of certain convictions to attack the credibility of the witness. For those convictions to be available to impeach credibility, "the probative value of admitting this evidence [must outweigh] its prejudicial effect to a party or a witness...." Ark. R. Evid. 609 (a).

■■ The State has a right to impeach the credibility of a witness with prior convictions under Rule 609. *Robinson* v. *State*, 295 Ark. 693, 751 S.W.2d 335 (1988). But the trial court has considerable discretion in determining whether the probative value of prior convictions outweighs their prejudicial effect, and that decision will not be reversed absent an abuse of discretion. *Thomas* v. *State*, 315 Ark. 518, 868 S.W.2d 85 (1994); *Donald* v. *State*, 310 Ark. 197, 833 S.W.2d 770 (1992); *Griffin* v. *State*, 307 Ark. 537, 823 S.W.2d 446 (1992). The admissibility of the prior convictions must be decided on a case-by-case basis. *Thomas* v. *State, supra; Pollard* v. *State*, 296 Ark. 299, 756 S.W.2d 455 (1988). When the defendant chooses to testify, this court has consistently permitted prior convictions to be used for impeachment even where those convictions are similar to the charge or charges before the trial court. *See, e.g., Donald* v. *State, supra* (burglary conviction used for aggravated robbery and burglary trial); *Griffin* v. *State, supra* (kidnapping, theft, and burglary convictions used in burglary and rape trial); *Simmons* v. *State*, 278 Ark. 305, 645 S.W.2d 680, *cert. denied* 464 U.S. 865 (1983) (kidnapping conviction used to impeach in kidnapping trial).

Turner argues that his conviction must be reversed under *Jones* v. *State*, 274 Ark. 379, 625 S.W.2d 471 (1981), *overruled on other grounds, George* v. *State*, 306 Ark. 360, 813 S.W.2d 792 (1991). In *Jones*, we reversed Jones's conviction for sexual abuse in the first degree perpetrated against a nine-year-old boy. The allegations were that Jones threw the boy to the ground and forcibly attempted to have anal intercourse with him. Jones did not take the stand but had he done so, the trial court made it clear that it would have allowed the State to impeach Jones's credibility with an earlier rape conviction, also involving a young boy. This court reversed the trial court's decision. In doing so, we recognized that "sexual abuse of a child is a particularly shameful and outrageous crime," and we held that the probative value of permitting impeachment with the prior rape conviction of a young boy had scant probative value as compared to a great potential for prejudice. We concluded that this

reference to a prior conviction for the same crime would all but convict the defendant. However, in *George* v. *State, supra,* we overruled the *Jones* decision as it pertained to prior convictions used as evidence under Arkansas Rule of Evidence 404(b).

In later cases, this court has generally distinguished the *Jones* case on the basis that in *Jones* the crime charged and the prior conviction to be used for impeachment showed a unique perversion that would have unduly tainted the jury. Included in the analysis has been the fact that other, less prejudicial convictions were available for impeachment which did not qualify as crimes of unique perversion. *See, e.g., Schalski* v. *State,* 322 Ark. 63, 907 S.W.2d 693 (1995) (false imprisonment conviction permissible in rape trial); *Kilpatrick* v. *State,* 322 Ark. 728, 912 S.W.2d 917 (1995) (sexual abuse conviction allowed in trial for cocaine possession with intent to sell and felon in possession of a firearm); *Jones* v. *State,* 282 Ark. 56, 665 S.W.2d 876 (1984) (prior convictions for burglary, attempted rape, kidnapping, assault and battery, robbery and larceny could be used in trial for battery and robbery).

■ In the instant case, the proof at trial came from the testimony of Alexandra and her mother. There was no physical evidence introduced to link Turner to the crime, and Turner denied his participation in the crime altogether. Thus, his credibility was a central issue in the case. Viewed in that light, his prior convictions were extremely probative. We hold that the trial court did not abuse its discretion in ruling as it did on this point.

■ We further question the continued viability of the *Jones* exception to Rule 609 impeachment. We have overruled that decision, as already noted in this opinion, for purposes of Arkansas Rule of Evidence 404(b), where the issue was the admissibility of prior convictions by the State to prove motive, intent, lack of mistake, and so forth. To permit the State to introduce convictions for the rape of a child as probative evidence in its case-in-chief under the aegis of Rule 404(b), but to disallow the usage of these crimes for credibility purposes under Rule 609 seems largely inconsistent. We can perceive no justification for this dichotomy in treatment, and we can certainly appreciate the probative impact of these prior convictions on the credibility of the defendant. We overrule *Jones* v. *State,* 274 Ark. 379, 625 S.W.2d 471 (1981).

## II. Recusal

■■ We turn next to the trial court's decision not to recuse in this case, which Turner claims was error. We note at the outset that a judge is required to recuse from cases in which his impartiality might reasonably be questioned. Ark. Code of Judicial Conduct, Canon 3E(1). However, there is a presumption of impartiality, and the party seeking disqualification bears the burden of proving otherwise. *Gentry v. State*, 47 Ark. App. 117, 886 S.W.2d 885 (1994). The decision to recuse is within the trial court's discretion, and it will not be reversed absent abuse. *Reel v. State*, 318 Ark. 565, 886 S.W.2d 615 (1994); *Sheridan v. State*, 313 Ark. 23, 852 S.W.2d 772 (1993). An abuse of discretion can be proved by a showing of bias or prejudice on the part of the trial court. *See Reel v. State, supra.*

The facts argued to show partiality were that (1) the trial court, Judge Robert Edwards, when serving as prosecuting attorney, had prosecuted Turner in the 1970's for a crime against another judge's wife; and (2) Judge Edwards again prosecuted Turner in 1981 for theft and in 1982 for burglary. Turner further claims that Judge Edwards later sat on the State Board of Pardons and Paroles for the burglary crime and that he (Turner) has filed "numerous lawsuits" against the county. At the pretrial hearing on this issue, Turner admitted, however, that even though the "circuit court" had been named in his lawsuits, Judge Edwards had not been personally named, and there was no proof presented to show that such suits had actually been filed. Furthermore, Judge Edwards stated on the record that he did not participate in parole board decisions where he had been the prosecutor for the prison inmate to be reviewed. The judge also observed that more than ten years had passed since the crimes prosecuted.

■ We initially observe on this point that there was no showing by Turner that he was treated unfairly in the trial of this matter. In fact, in Turner's reply brief his counsel admitted that Turner was treated fairly at trial. In addition to that fact, in *Cooper v. State*, 317 Ark. 485, 879 S.W.2d 405 (1994), we held that a trial judge need not recuse simply because that judge had previously prosecuted the defendant for a separate crime which was to be used for sentence enhancement purposes. We also agree with the judge that considerable time has passed since those earlier prosecutions. We perceive no basis for holding that the trial judge abused his discretion in not recusing under these facts.

### III. Discovery Violations

Following entry of judgment, Turner moved for a new trial pursuant to Ark. R. Crim. P. 36.22,[2] and alleged discovery violations. Rule 36.22 states that if a hearing is requested or found to be necessary, a hearing date shall be designated. Here, a hearing was requested but the trial judge made his ruling in the absence of a hearing. Because of this, Turner argues that he was denied the ability to examine Officer O'Brien on why Alexandra's visual identification of Turner was omitted from his police report.

■ The State's response is that a hearing was unnecessary, and we agree. There is, first, the fact that Turner did not object at the first opportunity to Alexandra's testimony that she recognized Turner's face during the attempted rape. We have held that objections to discovery violations must be made at first opportunity in order to be preserved. *Clark* v. *State*, 323 Ark. 211, 913 S.W.2d 297 (1996). But it was also immaterial that Officer O'Brien omitted her visual identification of Turner from the report while including her voice identification. The fact that she could positively identify Turner was the critical point, and that fact was disclosed.

■ Turner argues that testimony taken at a posttrial hearing was needed to show improper motive on the part of the State in its failure to disclose, but there is no evidence to show noncompliance with Ark. R. Crim. P. 17.1. Simply put, there was no error committed by the trial court in its refusal to grant a hearing, because the hearing would have been superfluous. *See Allred* v. *State*, 310 Ark. 476, 837 S.W.2d 469 (1992). Finally, although Rule 36.22 states that a hearing is required when it is requested, the rule provides no sanction for when a hearing is not afforded a party. Certainly, a new trial is not contemplated under the terms of the rule for failure to hold a hearing.

■ As a corollary point, Turner argues that a mistrial for the discovery violation should have been declared. Declaration of a mistrial, of course, is a drastic remedy and is proper only when the error is beyond repair and cannot be corrected by any curative relief. *Goins* v. *State*, 318 Ark. 689, 890 S.W.2d 602 (1995). In addition, the granting of a mistrial is within the sound discretion of

---

[2] This rule is now contained in Ark. R. Crim. P. 33.3.

the trial court, and the exercise of that discretion will not be disturbed on appeal absent a showing of abuse. *Bradley* v. *State*, 320 Ark. 100, 896 S.W.2d 425 (1995). In this case, the mistrial motion was not timely, as already noted. *See Clark* v. *State, supra.* Any objection should have been made during the testimony of Alexandra. Moreover, Turner's counsel cross-examined both Alexandra and Officer O'Brien on her identification of Turner. Again, we discern no prejudice to Turner. He unquestionably knew that Alexandra had recognized him and would testify to that fact. A mistrial was clearly not warranted.

Affirmed.

DUDLEY, J., not participating.