Antonio AYERS *v.* STATE of Arkansas

CR 97-368 975 S.W.2d 88

Supreme Court of Arkansas
Opinion delivered September 17, 1998

*McCullough Law Firm*, by: *R.S. McCullough* and *Gail Anderson*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

W.H. "DUB" ARNOLD, Chief Justice. The appellant, Antonio Ayers, was convicted of capital murder and theft of property in excess of $2,500.00, for the February 25, 1995, murder of William Hall and subsequent taking of Hall's vehicle. Mr. Ayers was sentenced to life imprisonment without parole on the charge of capital murder and twenty years in the Arkansas Department of Correction on the charge of theft of property. Mr. Ayers asserts

five points on appeal. First, Ayers contends that the trial court erred by admitting Wayne Eatmon's testimony describing what he saw and heard while observing the homicide with which Ayers was charged. Second, Ayers contends that the trial court erred by allowing, during the trial, a reference to "possible blood." Third, Ayers contends that the trial court erred by not granting his motion to dismiss the charge of theft of property, contending that the State failed to offer sufficient proof of value. Fourth, Ayers argues that the trial court violated his Fourth, Sixth, and Fourteenth Amendment rights by refusing to allow him to call the deputy prosecutor as a witness. Fifth, Ayers asserts that the trial judge erred by not recusing in this matter. Finding no merit in appellant's arguments, we affirm his conviction and sentence.

Sometime between 12:00 midnight, February 24, 1995, and 1:00 a.m., February 25, 1995, in the parking lot of the Whisperwood Apartments on Baseline Road in Little Rock, appellant Antonio Ayers and William Hall were involved in an argument. As the argument intensified, Ayers drew a gun and shot Hall once in the chest and once in the back, as Hall tried to run away. Hall continued running from Ayers, but Ayers caught up with Hall and began kicking him and beating him until Hall was left lying on the parking lot. Ayers then left but returned in Hall's vehicle and drove over Hall's body. Ayers then fled the scene in Hall's vehicle, leaving Hall for dead.

Prior to trial, appellant moved that the trial judge recuse in the case. This request was denied and was never renewed again. Also prior to trial, appellant filed a motion in limine to suppress the testimony of Wayne Eatmon, a witness who would testify that the night of the murder, while he was present at Whisperwood Apartments, he heard someone make the statement, "No, Antonio, don't." He could not, however, identify whose voice it was. As the basis of appellant's objection was relevance under Rule 403, the judge withheld ruling on this motion until the issue arose at trial. At the appropriate time during the trial, appellant again objected to Eatmon's testimony on the basis of relevance. The trial court overruled the objection and allowed the State to present the testimony.

During the trial, appellant objected to testimony from Annette Tracy, a crime-scene specialist with the Crime Scene Search Unit of the Little Rock Police Department, concerning "possible blood" found on the underneath side of the victim's vehicle. The trial court overruled appellant's objection and allowed the State to present the testimony. Also during the trial, appellant requested to call John Johnson, a deputy prosecuting attorney prosecuting this case, as a witness. The trial court denied that request.

Finally, at the close of the case, appellant moved to dismiss the charge of theft of property, contending that the State had offered no proof of value. The trial court denied the motion. From these findings and appellant's convictions, comes the instant appeal.

## I. Admission of Testimony

### A. Testimony of Wayne Eatmon

Appellant claims that the trial court erred by admitting testimony by eyewitness Wayne Eatmon that he heard someone say, "No, Antonio, don't," just before the victim was shot and killed. Antonio is appellant's first name. Appellant asserts that the admission of this testimony was improper because the speaker's voice was not identified or authenticated under Arkansas Rule of Evidence 901. Appellant, however, never objected in the trial court on the basis of Rule 901.

At a pretrial hearing, the trial court considered appellant's motion in limine to exclude Eatmon's testimony. In response to a question by the court as to the nature of his objection, appellant's attorney stated, "Relevance, and unduly prejudicial, all under [Arkansas Rule of Evidence] 403." Because the basis of the objection was relevance under Rule 403, the judge withheld ruling on the motion until the issue arose at trial.

Before Eatmon took the stand at trial, his testimony was proffered at a hearing outside the presence of the jury. In the proffer, Eatmon testified that he lived at the apartment complex where the shooting occurred. He was awakened by an altercation

taking place in the parking lot. He looked out of his window and saw two men fighting. He could tell that one of the men was black, but could not determine the race of the other man, due to the lighting. Eatmon testified that he saw the black man pull something out of his pocket and point it at the other man. Eatmon heard someone say, "No, Antonio, don't." Next, he saw three "flashes" coming from the extended arm of the black man and heard three "pops."

Appellant again objected to Eatmon testifying at trial on the basis that his testimony would be unduly prejudicial, misleading, and confusing to the jury under Arkansas Rule of Evidence 403. The court overruled appellant's objection and ruled that Eatmon could testify. At no time did appellant ever make a specific objection based on Arkansas Rule of Evidence 901 or mention lack of foundation or authentication.

■ ■ We have stated on numerous occasions that we will not consider an argument raised for the first time on appeal. *Slaton v. Slaton*, 330 Ark. 287, 956 S.W.2d 150 (1997); *McGhee v. State*, 330 Ark. 38, 954 S.W.2d 206 (1997). To preserve an argument for appeal, there must be an objection in the trial court that is sufficient to apprise the court of the particular error alleged. *Love v. State*, 324 Ark. 526, 922 S.W.2d 701 (1996). A party cannot change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Henderson v. State*, 329 Ark. 526, 953 S.W.2d 26 (1997).

■ Even if Rule 901 were to apply to this situation, appellant never objected on the basis of Rule 901 below. His objection was made solely on the basis of relevancy under Rule 403. His entire argument on appeal, however, is based on Rule 901. Because he has changed the basis of his objection on appeal, this Court will not consider his argument on this point.

B. *Testimony regarding "possible blood"*

At trial, the State presented evidence showing that after appellant shot the victim, William Hall, appellant got into Hall's vehicle and drove over Hall. It is important to note that appellant does not challenge the sufficiency of the State's evidence on

appeal. During the State's direct examination of Annette Tracy, a crime–scene specialist with the Little Rock Police Department, the deputy prosecutor asked Tracy to identify State's Exhibit 25. Tracy described the exhibit as a photograph of the underside of Hall's vehicle with "what appears to be possible blood" on the oil pan. The State then moved to admit the photograph.

Appellant objected to the admission of the exhibit, claiming that it was not relevant and was unduly prejudicial because Tracy had described only "possible blood." The deputy prosecutor stated that subsequent evidence would show that samples collected from the underside of the car were identified as human blood of the victim's blood type. On that basis, the trial court admitted the photograph.

Subsequently at trial, Scott Sherill, a forensic serologist with the State Crime Lab, testified that the substance shown in State's Exhibit 25 was human blood but that he was not able to determine the blood type. Appellant then moved for a mistrial on the basis that the State had presented no evidence connecting the blood found underneath the car to the victim. The judge denied that motion, and appellant then moved to have the evidence "unadmitted." The judge also denied that request, along with a request to admonish the jury to ignore the evidence.

Appellant relies on *Brenk v. State*, 311 Ark. 579, 847 S.W.2d 1 (1993), to support his contention that the reference to "possible blood" requires reversal because the blood found underneath Hall's car was not conclusively proven to be Hall's own blood. Appellant mischaracterizes this Court's ruling in *Brenk*. The *Brenk* case confronted the issue of whether evidence of luminol testing should be allowed in light of the fact that luminol does not distinguish between certain metals, vegetable matter, human blood, or animal blood. This Court held that evidence about the use of luminol would not be admissible unless additional tests showed that the substance tested was human blood related to the alleged crime. *Brenk* clearly does not apply to the facts of the instant case because luminol was not used and because serological testing showed that the substance found underneath Hall's car was, in fact, human blood.

Appellant also relies on the case of *Palmer v. State*, 315 Ark. 696, 870 S.W.2d 385 (1994). Similarly, appellant's reliance on *Palmer* is misplaced because it also refers to the use of luminol evidence at trial. Furthermore, there was no evidence in that case to show that the victim had ever even been in the bedroom of a house where the substance was detected by the use of luminol. Still, as in the present case, Sherill was able to identify human blood, but not blood type. The fatal flaw in *Palmer* was not the inability to establish the blood type but rather the lack of proof that the victim had even been at the location where the blood was found.

■ Again, in the instant case, the State presented evidence that appellant drove over Hall in Hall's vehicle after shooting him; this is evidence which appellant does not challenge on appeal. Therefore, unlike *Palmer*, the State proved that Hall had, in fact, been underneath the car, where the blood was found, at a time when he was bleeding profusely from newly inflicted gunshot wounds. In short, the State presented very convincing circumstantial evidence connecting the blood found underneath the victim's vehicle with this crime.

■ ■ A trial court's evidentiary ruling will not be reversed absent an abuse of discretion. *Webb v. State*, 327 Ark. 51, 938 S.W.2d 806 (1997). Relevant evidence means any evidence having the tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Id.* at 62. The evidence at issue was relevant to establish that appellant had driven over a wounded, bleeding man whom he had just shot.

■ Appellant further relies on the case of *Whitson v. State*, 314 Ark. 458, 863 S.W.2d 794 (1993), which discusses the use of "novel scientific evidence." Appellant never claimed in the court below that the tests performed by Sherill were "novel." In fact, the tests appellant now complains of have been in existence for many years. They are a routine part of criminal investigations and are frequently admitted by our courts. *See Lee v. State*, 327 Ark. 692, 942 S.W.2d 231 (1997); *Johnson v. State*, 308 Ark. 7, 823 S.W.2d 800 (1992); *McDonald v. State*, 37 Ark. App. 61, 824

S.W.2d 396 (1992); *Linder v. State*, 273 Ark. 470, 620 S.W.2d 944 (1981). In each of these cases, the evidence of blood identity, *i.e.* animal or human and blood typing, was introduced without question concerning its novelty or reliability. Further, Sherill's testimony that the substance was human blood rendered moot any problem that may have existed with Tracy's reference to "possible blood" being depicted in State's Exhibit 25. Indeed, the substance was proven to be human blood; therefore, any prejudice was negated when Sherill identified the substance as human blood.

## II. Insufficiency of the evidence with regard to the theft-of-property charge

In addition to capital murder, appellant was also charged with and convicted of theft of property valued at over $2,500, pursuant to Ark. Code Ann. § 5-36-103(b)(1)(A) (Repl. 1997), with respect to his taking of the victim's vehicle after shooting the victim. Appellant preserved this issue by making specific motions regarding proof of value at both the close of the State's case-in-chief and at the close of all the evidence.

Appellant raises two points in regard to the charge of theft of property. First, he contends that the State failed to present sufficient proof of the value of the victim's vehicle, and that therefore the trial court erred by not granting appellant's motion for a directed verdict to dismiss that charge. Second, appellant claims that there was no evidence showing that he knowingly took Hall's car with the purpose of depriving the owner of its use.

Appellant never challenged the evidence on the second basis in the court below. His sole claim for dismissal of the theft charge at trial was insufficient proof of value. Where an appellant argues on appeal grounds for a directed verdict in addition to the grounds he raised below, the appellate court limits its review to those grounds that were presented to the trial court. *Johnson v. State*, 326 Ark. 3, 929 S.W.2d 707 (1996). This Court will, therefore, not address the second portion of appellant's argument on this point.

In regard to the issue of the vehicle's value, appellant begins his argument by suggesting that the evidence of value is

insufficient because the State did not call the car's owner to testify. A directed verdict is a challenge to the sufficiency of the evidence. *Graham v. State*, 314 Ark. 152, 861 S.W.2d 299 (1993). The test for determining the sufficiency of the evidence is whether there is substantial evidence to support the verdict. *Britt v. State*, 334 Ark. 142, 974 S.W.2d 436 (1998); *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998); *Friar v. State*, 313 Ark. 253, 854 S.W.2d 318 (1993). On appeal, this court reviews the evidence in the light most favorable to the appellee and sustains the conviction if there is any substantial evidence to support it. *Abdullah v. State*, 301 Ark. 235, 738 S.W.2d 58 (1990). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Jones v. State*, 269 Ark. 119, 598 S.W.2d 748 (1980).

Value is defined in relevant part at Ark. Code Ann. § 5-36-101(11)(A)(i) (Repl. 1997), as "[t]he market value of the property or services at the time and place of the offense. . . ." While testimony by the owner as to the property's value is certainly helpful, it is neither conclusive nor required. *Moore v. State*, 299 Ark. 532, 773 S.W.2d 834 (1989). Moreover, in the case at bar, the owner of the vehicle is dead. The preferred method of establishing value is by expert testimony, not by testimony from the owner. *Coley v. State*, 302 Ark. 526, 790 S.W.2d 899 (1990). Value, however, may be sufficiently established by circumstances that clearly show a value in excess of the statutory requirement. *Id.* at 529. The purchase price paid by the owner is admissible as a factor for the jury to consider in determining market value, when it is not too remote in time and bears a reasonable relation to present value. *Id.* Thus, when the circumstances present substantial evidence indicating the value of property, direct proof of value is not required. *Stewart v. State*, 302 Ark. 35, 786 S.W.2d 827 (1990).

At trial, the State introduced, without objection, State's Exhibit 51, which consisted of certified documents pertaining to the victim's vehicle from the Office of Motor Vehicles of the Department of Finance and Administration. Among those documents was an invoice from Prestige Toyota-Hyundai, showing that Hall had purchased the 1994 Hyundai Elantra GLS new

on January 31, 1994, for a total price of $19,390.20. The date of the offenses at issue in this case occurred just over one year later, on February 25, 1995. The State also introduced a number of photographs depicting the car following the murder and theft. Those photographs showed the vehicle to be in good condition and without any obvious defects or damage. This would undoubtedly constitute substantial evidence from which the jury could reasonably conclude that the depreciation had not been so great as to reduce the car's value from over $19,000 to under $2,500 in one year's time. The jurors are allowed to draw upon their common knowledge and experience in reaching a verdict from the facts proved. *Robinson v. State*, 317 Ark. 17, 875 S.W.2d 837 (1994).

Moreover, in *Stewart v. State*, 302 Ark. 35, 786 S.W.2d 827 (1990), this Court found the evidence of value sufficient where the car had been purchased three years earlier, evidence of the purchase price was presented, and a photograph of the car showing it to be in excellent condition was admitted. The instant case presents even further compelling facts supporting the sufficiency of the evidence.

Appellant relies on the case of *Brooks v. State*, 303 Ark. 188, 792 S.W.2d 617 (1990), which he interprets as requiring verbal testimony on the issue of value, as opposed to documentary and photographic evidence. The *Brooks* case was a Rule 37 case, alleging ineffective assistance of counsel. Brooks claimed that his attorney was ineffective for failing to make a hearsay objection when the only evidence of value was the testimony of department store security guards who testified to the price that appeared on the price tags of stolen merchandise. This Court granted the Rule 37 petition in that case, holding that the price shown on the price tags was hearsay. In so holding, the Court stated that "[i]t is necessary *in a case like this* to have someone testify who has actual knowledge of the property's fair market value." *Id.* at 191 (emphasis added).

The case at bar, however, is far distinguishable from *Brooks*. The problem in *Brooks* was that the only evidence of value was hearsay. No hearsay objection was made in this case to the certi-

fied documents from the Office of Motor Vehicles; in fact, they were excepted from the hearsay rule as public records. Ark. R. Evid. 803(8). The nature of the evidence that could be presented in the two cases is very different. In *Brooks*, the testimony of someone having direct knowledge of the value of the merchandise was required; in the instant case, the introduction of certified copies of documents from a government agency met that requirement.

█ Even if this Court concluded that the evidence of value was insufficient, that holding would not affect appellant's conviction for capital murder based upon premeditation and deliberation; it would simply require that the theft charge be reduced to a misdemeanor rather than to be dismissed. Nonetheless, the State has presented substantial evidence of the vehicle's value in order to allow the trial court to submit the issue to the jury. The trial court did not err by denying appellant's motion to dismiss the charge of theft of property.

### III. Denial of request to call deputy prosecutor as witness

During the trial of this matter, appellant called Robert Daniels as an alibi witness. Daniels testified on direct examination that he was playing cards and dominoes with appellant at the time the victim was murdered. On cross-examination, Daniels admitted that he never informed the police that he had been with appellant that evening, even after he learned appellant had been charged with these crimes. The following exchange then occurred between the deputy prosecuting attorney and Daniels:

> DEPUTY PROSECUTOR: All right. And his mother's name is Rowena Hampton? Is that right?
>
> MR. DANIELS: Yes, sir, it is.
>
> DEPUTY PROSECUTOR: Is she the same lady that was in the witness room telling you not to talk to me before you testified?
>
> MR. DANIELS: Yes, sir, she was.
>
> DEPUTY PROSECUTOR: And you refused to talk to me before you testified?
>
> MR. DANIELS: I didn't refuse. I just didn't have anything to say.

DEPUTY PROSECUTOR: Did I ask you to talk? Did I request that you talk with me about your testimony?

MR. DANIELS: No.

At this point, appellant's attorney objected to the relevancy of this testimony and claimed that it was argumentative. Counsel also asserted that the deputy prosecutor was "interjecting himself into the case." Counsel stated that the deputy prosecutor should have informed the court and defense counsel if Daniels had refused to talk to him. The trial judge did not rule on appellant's objection. The following exchange then occurred as cross-examination continued:

DEPUTY PROSECUTOR: Mr. Daniels, I requested that you speak with me about your testimony, and you refused to talk with me. Is that right?

MR. DANIELS: Under the advice of the family, the attorney, and everything, I was told not to say anything.

DEPUTY PROSECUTOR: All right.

MR. DANIELS: I mean, nobody else said anything. I didn't say anything.

Defense counsel then informed the court that all he had told Daniels was that he did not have to be harassed by the prosecutor. The judge told counsel that he could address the matter on redirect.

On redirect, Daniels testified that all the defense attorney had told him was that no one could harass him while he was "down there." Daniels further asserted that the deputy prosecutor never explained his reasons for wanting to talk to Daniels, and that the deputy prosecutor had incorrectly called him "Bill Lewis."

At the conclusion of redirect examination, defense counsel called the deputy prosecutor as a witness. The court summoned counsel to the bench, and the defense attorney offered this explanation for calling the deputy prosecutor:

He says that the first time he even makes it to try to inquire. It was sent to him in a letter back in May. He knew who this guy

was. It has his address on it. If he wanted to try to talk to him, he could have used an office subpoena or something else.

After excusing the jury from the courtroom, the trial judge admonished defense counsel to refrain from calling the deputy prosecutor as a witness in front of the jury. Defense counsel contended that the deputy prosecutor had acted in bad faith by implying that defense counsel had prevented Daniels from talking to the deputy prosecutor. Counsel requested that an "instanter" subpoena be issued for the deputy prosecutor, and claimed he would question the deputy prosecutor as to whether he had received the letter containing Daniels's name, lest the jury believe the defense had hidden Daniels from the prosecution. Appellant also requested a mistrial be granted. Both the motion for a subpoena and the motion for a mistrial were denied by the trial court.

In appellant's present argument, he has cited no authority that holds that the specific actions by the deputy prosecutor in this case constitute prosecutorial misconduct or entitle him to any form of relief. Appellant merely argues and makes fleeting references to various portions of the United States Constitution. Appellant's failure to cite authority or make a convincing argument is sufficient reason for affirmance of the trial court's ruling on this point. *Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997). It is certainly not apparent without further research that appellant's argument is well-taken. *Roberts v. State*, 324 Ark. 68, 919 S.W.2d 192 (1996). In sum, appellant has failed to demonstrate that the trial court erred by denying his request to call the deputy prosecutor as a defense witness in this case.

### IV. Failure by trial judge to recuse

At a hearing held prior to the trial of this matter, appellant asserted that he had learned that the trial judge was a friend of a man named Roland Smith. Smith, according to appellant's attorney, owned a pawnshop that appellant had been charged with burglarizing in another case, unrelated to the present case, and the judge had recused from presiding over that case.

The trial judge denied that he knew anyone by the name of Roland Smith but stated that he probably recused from a case

involving a pawnshop owner by the name of Troy Braswell, whom the judge did know. Based upon defense counsel's statement that there was no relationship between the two cases, the judge declined to recuse from this case and no further request or discussion of the judge's recusal was ever mentioned throughout the trial.

 Recusal was not required in this case. The Arkansas Constitution, Article 7, § 20, as well as the Arkansas Code of Judicial Conduct, Canon 3(c), provide that judges must refrain from presiding over cases in which they might be interested and must avoid all appearances of bias. *Matthews v. State*, 313 Ark. 327, 854 S.W.2d 339 (1993). However, a judge is not required to recuse because of his or her life experiences. *Reel v. State*, 318 Ark. 565, 886 S.W.2d 615 (1994). In addition, there exists a presumption of impartiality. *Turner v. State*, 325 Ark. 237, 926 S.W.2d 843 (1996). Even if the judge knew someone connected with another criminal case involving appellant, that alone would not require him to recuse. The decision to recuse is within the trial court's discretion, and it will not be reversed absent abuse. An abuse of discretion can be proved by a showing of bias or prejudice on the part of the trial court. *Id.* at 244; *Trimble v. State*, 316 Ark. 161, 871 S.W.2d 562 (1994).

 We should first consider this issue by determining if there is any evidence of bias or prejudice in the record. In *Turner v. State*, 325 Ark. 237, 926 S.W.2d 843 (1996), we stated that the party seeking the disqualification bears the burden of proving bias or prejudice on the part of the trial court. *See also Keene v. State*, 56 Ark. App. 42, 938 S.W.2d 859 (1997); *Gentry v. State*, 47 Ark. App. 117, 886 S.W.2d 885 (1994). Applying that rule, appellant has made no showing here that he was treated unfairly during trial. He has alleged no specific instances of bias or shown in what way he was prejudiced by the trial judge's failure to recuse.

 Appellant never established that Braswell owned the pawnshop that appellant had allegedly burglarized. Defense counsel specifically stated that Roland Smith owned that store, and the judge did not know Smith. While the judge recalled having recused in a case involving a pawnshop owned by Troy Braswell, it

was never conclusively stated that that particular recusal had occurred in one of the appellant's cases. Appellant has simply failed to establish any connection between this case and a case involving Braswell's pawnshop and has further failed to establish any bias or prejudice on the part of the trial court.

### V. Rule 4-3(h) compliance

The record has been reviewed for prejudicial error pursuant to Ark. Sup. Ct. R. 4-3(h), and no reversible errors were found.

Affirmed.