STATE of Arkansas *v.* Rayburn Ted JONES

CR 06-1016                                               252 S.W.3d 119

Supreme Court of Arkansas
Opinion delivered March 8, 2007

*Dustin McDaniel*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellant.

*Smith & Horwart*, by: *Christine Horwart*, for appellee.

PAUL E. DANIELSON, Justice. The appellant, the State of Arkansas, appeals from the circuit court's order granting the motion to suppress of the appellee, Rayburn Ted Jones. The State's sole point on appeal is that, because there was only an insubstantial violation that tainted the affidavit for the search warrant at issue, the circuit court erred in granting the motion to suppress. Because we hold that this is an improper state appeal, we dismiss the appeal.

The underlying facts are these. On December 2, 2004, Mary Alexander, a Wal-Mart employee, witnessed an individual, whom she later identified as Jones, purchase the following items: twelve cartons of match books, iodine, a shop light, two other lights, and windshield washer. After Jones checked out with those items,

Alexander saw him in the sporting goods department with a shopping cart holding propane canisters. She then saw him check out a second time, and a review of the reprinted receipt revealed the following items as having been purchased: acetone, propane, an antifreeze tester,[1] ammunition, match holders, and shotgun shells. Anderson called the police department and, upon the return of her call, relayed the information, including the make and model of the purchaser's car and its license tag number, which Anderson had obtained from a store manager, to Detective Brian Culpepper, a narcotics detective.

Detective Culpepper ran the license plate, which returned a name, Rayburn Jones, and an address, 8267 Elm Lane. After driving to the house to confirm the address and seeing the vehicle, which was described by Anderson, at the home, Detective Culpepper went to Wal-Mart, obtained copies of the aforementioned receipts, and talked with Anderson. While reviewing the receipts, Detective Culpepper recognized some of the items as those used in the manufacture of methamphetamine. Detective Culpepper then checked the criminal information records for Ray Jones and received a "hit" for Rayburn Ted Jones. After obtaining a picture of Jones, Detective Culpepper took the photo to Wal-Mart, at which time Anderson identified Jones as the person who made the purchases.

After that, Detective Culpepper and Detectives Jesse Ray and Lee Kelly went to Jones's residence to conduct a "knock and talk." Jones and another male, Ed Childress,[2] were outside of the home in the yard pulling a boat. After making contact with the two men, the detectives separated them so that they could be spoken to separately.

Detective Culpepper then told Jones that they had received information that he was buying materials to make methamphetamine. Jones gave him permission to search his person and Detective Culpepper conducted a pat-down of Jones. Detective Culpepper then asked Jones for permission to search his residence, which Jones refused.

---

[1] Alexander testified that such a tester is used "to withdraw liquid from one place … to another."

[2] Detective Culpepper testified that they had received previous information from several people that Childress was a methamphetamine dealer.

At that time, Detective Culpepper walked over to Detective Ray, who said that he smelled a methamphetamine lab. Detective Culpepper smelled the same and went to the front of the home to determine whether anyone was inside. While he was doing that, Detective Lee asked Jones if he had any drugs on his person and whether he minded if Detective Lee searched his pockets. According to Detective Lee, Jones responded that he did not care, but that the other officer had already searched him. Detective Lee searched Jones and found a small baggie with methamphetamine residue in his watch pocket. Jones was placed under arrest and the detectives performed a security sweep of the home's exterior and interior. The detectives then made the decision to obtain a search warrant.

After acquiring the search warrant, the detectives searched the premises and precursors to making methamphetamine were found. Jones was ultimately charged with the use of drug paraphernalia with the intent to manufacture methamphetamine, and he filed a motion to suppress the evidence against him. In it, he stated that upon denying consent to search his residence, the "knock and talk" should have ended. He further asserted that he denied Detective Ray's request for consent to search his person and that, although the investigation began as a "knock and talk," it escalated into a seizure of his person, in violation of his Fourth Amendment rights and his rights under article 2, section 15 of the Arkansas Constitution. He claimed that although the police officers had probable cause to obtain a search warrant, no exigent circumstances existed that justified their entry into his home without a warrant to conduct a security sweep and, further, that he never gave them consent to search. For that reason, he claimed, there was no reasonable basis to make a warrantless entry into his home against his rights. He maintained that as a direct result of the illegal seizure of his person and the subsequent warrantless entry into his home, all evidence obtained as a result of those violations should be suppressed as fruit of the poisonous tree, including the baggie located on his person and all items confiscated from his residence. The State responded, and a hearing was held on Jones's motion on July 7, 2006.

At the hearing, the detectives testified to the events of December 2, 2004, and Jones put on testimony that it was not he that had made the second purchase of items, but another person, Jeffrey Shaw. Shaw testified that it was his receipt and that his debit card was used by him to make the purchases. Ed Childress also testified, stating that he did not hear Jones consent or agree to

allow Detective Ray to search him and that he heard him say, "I didn't give you consent." He testified that he did not feel free to get in his car and drive away and that there was never a time at which he felt free to exit the situation.

At the conclusion of the testimony, the circuit court stated that it was satisfied that Jones did not make the second purchase at Wal-Mart, but that Ms. Alexander believed it to be true and, for that reason, the circuit court did not have an issue with the information in the search warrant. The circuit court then said, in pertinent part:

> Number one, the Court is — is satisfied that a reasonable person would not have felt free to leave and — and that the exigent circumstances did not exist, but I'm not — that didn't have anything to do with the validity of the search warrant. The linchpin, as I said, is the consent to search. In the consent to search, in this case, there is the proof and there is not clear and positive proof. And that — that particular — the results of that search is the key ingredient, ultimately, in the validity of the search warrant. So the question that flows from all that invalidates it and the motion to suppress is granted. But I don't know where this leaves us.

Upon being asked for clarification by the prosecutor, the circuit court agreed that even if the finding of the methamphetamine was not in the search warrant, it did not think that there was enough probable cause to sign the search warrant. The circuit court then memorialized its ruling in a bench order filed July 10, 2006, which indicated that Jones's motion to suppress was granted. The State filed a notice of appeal, which appeal is now before us.

The State argues that the instant appeal involves the correct and uniform administration of the law because the circuit court applied a flawed interpretation of the law to suppress evidence seized pursuant to a search warrant. It contends that the circuit court erred in granting Jones's suppression motion because the nonconsensual search of Jones's pocket was not a substantial violation in the context of a search-warrant application. The State additionally argues that in ruling that there was not sufficient probable cause in the affidavit to support the search warrant, even without the evidence of the baggie containing methamphetamine residue, the circuit court erred as a matter of law in its interpretation of Ark. R. Crim. P. 13.1(b) and case law interpreting the "independent-source rule." For these reasons, the State contends,

this court should reverse the circuit court's order suppressing the evidence seized from Jones's residence and remand the matter for further proceedings.

Jones responds that, despite the State's attempt to phrase its argument in terms of an error in interpretation, every point the State makes turns on the circuit court's application of the law under the specific facts of this case and, for that reason, it is an improper state appeal. As to the merits, Jones contends that an examination of the factors set forth in Ark. R. Crim. P. 16.2(e) leans in favor of suppression. He further submits that the independent-source rule was not a factor in the circuit court's decision. He avers that the State has no basis for characterizing the violation as insubstantial and that where there were numerous violations of a suspect's rights, with no intervening event or even distance in time between the illegality and a warrant based in part on illegally obtained information, the evidence must be suppressed.

### Propriety of the State's Appeal

Prior to examining the merits of any state appeal, we must first determine whether it is a proper state appeal. Arkansas Rule of Appellate Procedure – Criminal 3(a)(1) provides that "[a]n interlocutory appeal on behalf of the state may be taken only from a pretrial order in a felony prosecution which (1) grants a motion under Ark. R. Crim. P. 16.2 to suppress seized evidence." Ark. R. App. P. – Crim. 3(a)(1) (2006). The rule further states:

> (c) When a notice of appeal is filed pursuant to either subsection (a) or (b) of this rule, the clerk of the court in which the prosecution sought to be appealed took place shall immediately cause a transcript of the trial record to be made and transmitted to the attorney general, or delivered to the prosecuting attorney, to be by him delivered to the attorney general. If the attorney general, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the state, and that *the correct and uniform administration of the criminal law* requires review by the Supreme Court, he may take the appeal by filing the transcript of the trial record with the clerk of the Supreme Court within sixty (60) days after the filing of the notice of appeal.

Ark. R. App. P. – Crim. 3(c) (emphasis added).

This court has frequently observed that there is a significant and inherent difference between appeals brought by criminal defendants and those brought on behalf of the State. *See State v.*

*Nichols*, 364 Ark. 1, 216 S.W.3d 114 (2005). The former is a matter of right, whereas the latter is not derived from the Constitution, nor is it a matter of right, but is granted pursuant to Ark. R. App. P. – Crim. 3. *See id.* We accept appeals by the State when our holding would be important to the correct and uniform administration of the criminal law. *See id.*

As a matter of practice, this court has only taken appeals that are narrow in scope and involve the interpretation of law. *See State v. Pittman*, 360 Ark. 273, 200 S.W.3d 893 (2005). We do not permit State appeals merely to demonstrate the fact that the trial court erred. *See id.* Thus, where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. *See id.* Similarly, where the resolution of the issue on appeal turns on the facts unique to the case or involves a mixed question of law and fact, the appeal is not one requiring interpretation of our criminal rules with widespread ramifications, and the matter is not appealable by the State. *See id.* Finally, where an appeal raises an issue of the application, not interpretation, of a criminal rule or statutory provision, it does not involve the correct and uniform administration of the criminal law and is not appealable by the State under Rule 3. *See id.*

Here, the State claims that the circuit court "applied a flawed interpretation of the law to suppress evidence seized pursuant to a search warrant." We hold that the resolution of the issues presented would necessarily require an intensive factual discussion. Therefore, this appeal is not one requiring interpretation of our criminal rules; instead, it raises issues involving the application of our rules to the facts of the case. Moreover, it is clear that the circuit court's determination necessarily turned on the circuit court's assessment of the witnesses' credibility. We have never wavered on our longstanding rule that it is in the province of the circuit court, not this court, to determine the credibility of witnesses. *See State v. Nichols, supra.* Nor would a review of this appeal have widespread ramifications on the interpretation of our criminal law. Accordingly, we hold that it does not involve the correct and uniform administration of the criminal law and does not fall within the confines of Ark. R. App. P. – Crim. 3. We, therefore, dismiss the appeal.

Appeal dismissed.