Darra BARRITT *v.* STATE of Arkansas

CR 07-1038                                          277 S.W.3d 211

Supreme Court of Arkansas
Opinion delivered February 21, 2008

*Dossey & Burke, PLC,* by: *Brian Thomas Burke,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *David R. Raupp,* Sr. Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellee State of Arkansas petitioned this court for review of the court of appeals' unpublished opinion in which that court denied the State's cross-appeal of Appellant Darra Barritt's conviction of battery in the first degree. *See Barritt v. State,* CACR 06-1261 (Ark. Ct. App. Sept. 19, 2007). The court of appeals affirmed Barritt's judgment of conviction on direct appeal, leaving only the cross-appeal by the State for our review. *Id.*

In its cross-appeal, the State argues that the circuit judge erred in refusing to recuse himself from Barritt's sentencing hearing due to the appearance of impropriety and requests that this court reverse the circuit judge's sentence and remand the case for another sentencing hearing under a different judge.

The facts of the case are these. On June 20, 2006, Darra Barritt was found guilty of battery in the first degree by causing serious physical injury to her two-month-old daughter under circumstances manifesting extreme indifference to the value of human life. The jury's verdict was a sentence of fifteen years' incarceration and a fine of $15,000. The judge scheduled a sentencing hearing for June 27, 2006, and then adjourned court.

Sometime between June 20 and June 27, 2006, one of the convicting jurors met with the circuit judge in chambers. Later on that week, the same juror, who was apparently impressed by defense counsel and was interested in hiring him for some legal work, met with defense counsel. Learning of this, the State's prosecutor filed a motion for the judge's recusal, asking that the judge recuse himself from the sentencing hearing.

This recusal motion was considered by the judge at the beginning of the June 27, 2006 hearing. At that time, the judge characterized his interaction with the juror as follows:

> [T]he Court was approached by one of the jurors in that particular case after the trial, and some — and I can't remember what day it was, but it was a day or two or three later, I don't remember exactly, and basically expressed — trying to think of the right word for it, expressed some regret with the verdict in terms of both the findings of first degree battery and the finding of the jury's recommendation as to sentencing and related some matters concerning that.

The trial judge further commented:

> And I'm a little bit offended, if not a great deal offended, by the idea that a juror — not that a juror would come talk to me, because that happens a lot, but would sit here in the jury box and raise their hand when he's asked if this is their verdict — his verdict and say yes, it is his verdict twice and then come back a day or so later and — and want to influence the ultimate application of that verdict or execution of that verdict.

Before announcing Barritt's sentence, the judge discussed the five factors which are, according to Arkansas law, the reasons for sentencing someone convicted of a crime. *See* Ark. Code Ann. § 16-90-801(a) (Repl. 2006).[1] The judge then reduced Barritt's sentence to twelve years' imprisonment, instead of the fifteen years recommended by the jury. The judge also refused the jury's assessment of a $15,000 fine.

Barritt appealed the judgment of conviction and sentence, and the court of appeals affirmed, as already referenced in this opinion. The State also cross-appealed, which the court of appeals dismissed under Rule 3(c) of the Arkansas Rules of Appellate Procedure – Criminal (2007).

The State petitioned for review, which this court granted, because, under Rule 3(c), criminal appeals by the State must be heard by this court and not by the court of appeals. Ark. R. App. P.–Crim. 3(c). Having granted the review, this court considers the

---

[1] Arkansas Code Annotated § 16-90-801(a) states:

(a) The primary purposes of sentencing a person convicted of a crime are:

(1) To punish an offender commensurate with the nature and extent of the harm caused by the offense, taking into account factors that may diminish or increase an offender's culpability;

(2) To protect the public by restraining offenders;

(3) To provide restitution or restoration to victims of crime to the extent possible and appropriate;

(4) To assist the offender toward rehabilitation and restoration to the community as a lawful citizen; and

(5) To deter criminal behavior and foster respect for the law.

State's cross-appeal "as though it had been originally filed in this court." *VanWagner v. Wal-Mart Stores, Inc.*, 368 Ark. 606, 608, 249 S.W.3d 123, 124 (2007).

The State, in its cross-appeal, does not dispute the circuit judge's authority to reduce Barritt's sentence. Instead, the State urges that the judge erred in refusing to recuse from the case because the judge's ex parte contact with a member of the jury created the appearance of impropriety. The State notes that, while judges have the authority to reduce criminal sentences,[2] they may not do so based on testimony by jurors regarding the meaning of the verdict.

Barritt, on the other hand, notes that the State has not claimed that the sentence imposed by the judge was unfair or against the weight of the evidence; neither does the State dispute the circuit judge's impartiality. The only allegation by the State, Barritt points out, is that the appearance of impropriety warrants remand for a new sentencing hearing.

In criminal appeals by the State, it is first necessary to determine whether the appeal is proper under Rule 3(c) of the Arkansas Rules of Appellate Procedure – Criminal, which states that "[i]f the attorney general, on inspecting the trial record, is satisfied that error has been committed to the prejudice of the state, and that the correct and uniform administration of the criminal law requires review by the Supreme Court, he may take the appeal."

The circumstances under which this court will consider an appeal by the State have often been reiterated by this court:

> This court's review of the State's appeals is not limited to cases that would establish precedent. As a matter of practice, this court has only taken appeals which are narrow in scope and involve the interpretation of law. Where an appeal does not present an issue of interpretation of the criminal rules with widespread ramifications, this court has held that such an appeal does not involve the correct and uniform administration of the law. Appeals are not allowed merely to demonstrate the fact that the trial court erred. Where the

---

[2] "The court shall have power in all cases of conviction to reduce the extent or duration of the punishment assessed by a jury so that the punishment is not in any case reduced below the limit prescribed by law in such cases if the conviction is proper and the punishment assessed is greater than ought to be inflicted under the circumstances of the case." Ark. Code Ann. § 16-90-107(e) (Repl. 2006).

resolution of the issue on appeal turns on the facts unique to the case, the appeal is not one requiring interpretation of our criminal rules with widespread ramification, and the matter is not appealable by the State.

*State v. Brooks*, 360 Ark. 499, 504, 202 S.W.3d 508, 512 (2005) (internal citations and quotations omitted). Stated differently, this court will consider an appeal by the State that raises a question of the circuit court's interpretation of a statute or rule but will not consider a question regarding the circuit judge's application of a statute or rule to the facts of a particular case. *State v. Boyette*, 362 Ark. 27, 30, 207 S.W.3d 488, 491 (2005).

The distinction between a State appeal that involves a question of interpretation and, therefore, implicates the correct and uniform administration of the criminal law and an appeal that involves merely a question of application and, therefore, does not implicate broader concerns is illuminated by a review of two cases regarding State challenges to a circuit judge's ruling to suppress evidence. *See State v. Jones*, 369 Ark. 195, 252 S.W.3d 119 (2007); *State v. Brown*, 356 Ark. 460, 156 S.W.3d 722 (2004).

In *State v. Brown*, this court agreed to hear an appeal by the State that raised the question of whether the Arkansas Constitution requires that a home dweller be advised of the right to refuse a consent to search prior to a consent being given. 356 Ark. at 465, 156 S.W.3d at 726. The holding announced by this court in *Brown* applied to all consensual searches and, therefore, involved the correct and uniform administration of the criminal law. *Id*. In contrast, in *State v. Jones*, this court declined to address the merits of the State's contention that the circuit court had erred in finding that a search-warrant affidavit lacked probable cause. 369 Ark. at 200, 252 S.W.3d at 123. This court held that, despite the fact that the State attempted to characterize the circuit court's error as a flawed interpretation of law, "the resolution of the issues presented would necessarily require an intensive factual discussion." *Id*. This was particularly true given that a determination of whether there was probable cause for a warrant involved an assessment of witnesses' credibility. *Id*.

On multiple occasions, this court has considered the merits of State appeals contesting the validity of a circuit court's imposition of a sentence that did not comport with statutory sentencing requirements. *See, e.g., State v. Joslin*, 364 Ark. 545, 222 S.W.3d 168, (2006); *State v. Rodriques*, 319 Ark. 366, 891 S.W.2d 63

(1995); *State v. Landis*, 315 Ark. 681, 870 S.W.2d 704 (1994). In these cases, however, this court was merely interpreting sentencing guidelines. None of these cases involved the review of a circuit judge's decision of whether to recuse from a court proceeding.

The State is correct that, in *Coran v. Keller*, this court announced the rule that "a trial judge, before ruling on a motion to modify the verdict, should not have an ex parte conversation with some of the jurors about anything which caused them to assent to the verdict" and that "to do so is error." 295 Ark. 308, 310, 748 S.W.2d 349, 350 (1988). But, *Coran* was a civil case, which did not require consideration of Rule 3(c). Moreover, in *Coran*, the circuit judge not only, at least to some degree, initiated the ex parte communication but also explicitly considered it in reaching his decision to modify the verdict. *Id.* at 309, 748 S.W.2d at 350 ("'I didn't make any inquiry of the jury, but two of them were in my office a week or two after this trial and said, 'What did you think about our verdict in the'-what's this-'the Keller-Coran case?' I said, 'Well, I think y'all made a big mistake in putting that stipulation on it.' They said, 'Now, Judge, if you had just sent us back into the jury room, we were prepared to remove that stipulation.' ").

Recusal is required when a judge's "impartiality might reasonably be questioned." Arkansas Code of Judicial Conduct Canon 3(E)(1) (2007); *Turner v. State*, 325 Ark. 237, 244, 926 S.W.2d 843, 847 (1996). This court has further said that, "[t]he decision to recuse is within the trial court's discretion, and it will not be reversed absent abuse. An abuse of discretion can be proved by a showing of bias or prejudice on the part of the trial court." *Turner*, 325 Ark. at 237, 926 S.W.2d at 843 (citations omitted).

There is, too, the point that judges are presumed to be impartial, and the party seeking disqualification has the burden of proving otherwise. *Davis v. State*, 367 Ark. 341, 240 S.W.3d 110 (2006); *Perroni v. State*, 358 Ark. 17, 186 S.W.3d 206 (2004). Hence, the decision to recuse from a sentencing hearing because of ex parte communication with a juror is necessarily based on the particular facts of the juror contact. Otherwise, any contact between the circuit judge and a juror, however minor or inconsequential, would automatically require recusal. Both this court and the United States Supreme Court have noted that a "conclusion that an unrecorded ex parte communication between trial judge and juror can never be harmless error ignores [the] day-to-day realities of courtroom life and undermines society's interest in the

administration of justice." *Howard v. State*, 367 Ark. 18, 35, 238 S.W.3d 24, 38 (2006) (quoting *Rushen v. Spain*, 464 U.S. 114, 119 (1983)).

■ Because resolution of this State appeal necessarily "turns on the facts unique to the case, the appeal is not one requiring interpretation of our criminal rules with widespread ramification." *State v. Hagan-Sherwin*, 356 Ark. 597, 602, 158 S.W.3d 156, 159 (2004). Therefore, under Arkansas Rule of Appellate Procedure – Criminal 3(c), this matter is not appealable by the State.

Appeal dismissed.

CORBIN, J., concurs.

GLAZE, J., dissents.

DONALD L. CORBIN, Justice, concurring. Because the State alleges error due to the circuit judge's failure to recuse from the sentencing hearing based upon an appearance of impropriety, rather than an alleged error in the sentence itself, I must agree with the majority that under Arkansas Rule of Appellate Procedure – Criminal 3(c) this is not a proper State appeal. However, I write separately to express my concern with what has transpired in this case. There is no doubt in my mind that the ex parte communication between the circuit judge and the juror, coupled with the judge's decision to reduce Appellant's sentence, created an appearance of impropriety. The Arkansas Code of Judicial Conduct states, in pertinent part:

> *Canon 2. A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities.*
>
> A. A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

The Commentary further explains that "[t]he test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired."

This is not to say that any ex parte communication between a judge and a juror during the course of a trial and sentencing is per se error. It is an issue that must be examined on a case-by-case basis

in order to uphold not only the judicial canons but also the integrity of the judicial system as a whole. As the United States Supreme Court pointed out in *Rushen v. State*, 464 U.S. 114, 118-19 (1983) (per curiam) (footnotes omitted):

> The lower federal courts' conclusion that an unrecorded *ex parte* communication between trial judge and juror can never be harmless error ignores these day-to-day realities of courtroom life and undermines society's interest in the administration of criminal justice.
>
> . . . .
>
> This is not to say that *ex parte* communications between judge and juror are never of serious concern or that a federal court on habeas may never overturn a conviction for prejudice resulting from such communications. When an *ex parte* communication relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties.

This case is such a situation where the communication was about the juror's trepidation with the jury's verdict and sentence, *and* the judge then subsequently reduced Appellant's sentence and did away with the fine that the jury had imposed. It does not matter that there is no actual impropriety alleged, the proceedings are tainted by the appearance of impropriety. A criminal defendant is entitled to a fair and impartial trial. The State is *equally* entitled to a fair and impartial trial.

While I am certainly aware that communications such as this may happen during the course of a trial, I do feel it necessary to remind the judges of this state that we are bound by the judicial canons to avoid the appearance of impropriety, which requires us to be proactive in protecting the integrity of the justice system. If a judge is approached by a juror to discuss any matter during the course of the trial, the practice should *always* be to record any communication with the juror, and to notify counsel for both parties of the situation so that they can be present, if at all possible, during the discussion. It is tantamount to the administration of justice that a judge maintain a record of all communications to avoid any appearance of impropriety as well as to avoid the possibility of having to reconstruct the record from memory. For that reason, we should always err on the side of caution.

TOM GLAZE, Justice, dissenting. In writing my dissent, I accept the facts set out in the majority opinion — even the

trial judge's statement that he was offended by the juror's regret regarding Darra Barritt's guilty verdict and the jury's recommendation in sentencing. Nor do I question the State's expressed belief and presumption that the judge was impartial in this case.

My concern is one of law. This court's Administrative Order No. 4 requires a complete record of all proceedings and reads as follows:

> Unless waived on the record by the parties, it shall be the duty of any circuit court to require that a verbatim record be made of all proceedings pertaining to any contested matter before it.

*See also Robinson v. State*, 353 Ark. 372, 108 S.W.3d 622 (2003).

There is no question that the instant case involves a seriously contested matter, namely Barritt's sentencing. Regardless of whether the judge was offended by the juror's seeking the judge out in an attempt to obtain a reduction in Barritt's sentence from that recommended by the jury, the judge had a duty to make a verbatim record on the issue, and he failed to do so.

Clearly, a judge is presumed to be impartial; however, it is just as clear that a judge *shall* avoid impropriety and the appearance of impropriety in all of the judge's professional and personal conduct.[1] Here, when the judge first learned that the juror wanted to visit with the judge regarding Barritt's case and sentence, the judge should have informed the juror that this matter must be on the record, and then advised the parties and respective counsel of the need for a record. Obviously, without such a disclosure, the parties and counsel had no opportunity to voice an objection or waive making a record of the matter.

In *Robinson, supra,* we announced to the bench and the bar that this court will strictly construe and apply Administrative Order No. 4. For the reasons above, I would reverse and remand for resentencing and appoint a different judge to preside over the case.

---

[1] The appearance of impropriety is particularly of concern because in this case, the judge reduced Barritt's sentence.