900 So.2d 662 (2005)
Alan MACKERLEY, Appellant,
v.
STATE of Florida, Appellee.
No. 4D03-2079.
District Court of Appeal of Florida, Fourth District.
April 6, 2005.
Rehearing Denied May 17, 2005.
Paul Morris of the Law Offices of Paul Morris, P.A., Miami, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Melynda Melear, Assistant Attorney General, West Palm Beach, for appellee.
KLEIN, J.
Appellant was convicted of first degree murder and argues that the trial court *663 should have excluded testimony that a Luminol test established the possibility of blood near appellant's front door, where the shooting allegedly occurred. We conclude that the fact that Luminol can react to other things besides human blood does not preclude its admissibility, but rather goes to its weight. We affirm the conviction.
The facts are set forth in Mackerley v. State, 754 So.2d 132 (Fla. 4th DCA 2000), an appeal from a prior trial. The essence of the state's case was that appellant had lured a business competitor to his home, where he shot and killed him. Appellant allegedly used his boat to dump the body in the ocean. The facts pertinent to our review of the evidentiary issue involving the Luminol test begin with testimony that, two days after the victim arrived in Florida and disappeared, appellant removed the drywall and carpet in the front area inside his home and replaced them. There was also evidence that appellant had purchased a trash can, duct tape, trash bags, and cleaning supplies the day after the victim's arrival in Florida, and that his boat had been out to sea during that time.
One of the state's witnesses, who maintained appellant's plane, testified that appellant had asked him to fly appellant over the ocean so appellant could see if the body was floating. This witness further testified that appellant told him he had shot the victim in the head, that there was blood all over the walls, ceiling, carpet and floors, and that he had removed the walls and carpeting. He also stated that appellant told him he had cleaned the area to eliminate forensic evidence.
Luminol has been generally accepted in the scientific community under Frye v. United States, 293 F. 1013 (D.C.Cir. 1923). State v. Canaan, 265 Kan. 835, 964 P.2d 681 (1998). That is not the basis of appellant's objection. He argues that, because Luminol reacts to other things as well as human blood, it is irrelevant, having no probative value.
A witness employed by the Florida Department of Law Enforcement crime lab characterized Luminol as a "presumptive test" for the presence of blood, which is generally accepted in the scientific community as a valid screening method. She testified that it is not conclusive because certain chemicals or plant materials can also cause a Luminol reaction. Case law acknowledges this. Palmer v. State, 315 Ark. 696, 870 S.W.2d 385 (Ark.1994) (Luminol can register positive for bleach, copper, nickel, cobalt and some plant enzymes).
A detective in the forensic science lab of the Martin County Sheriff's Office testified that there was a Luminol reaction on the terrazzo by appellant's front door. He cautioned that Luminol does not differentiate between animal and human blood, nor is it specific for any type of blood. It can also react to certain metals or chemicals. Phenolphthalein, which is similar to Luminol for purposes of this case, reacted positively on things which were in appellant's house and a carpet sample from his boat. Appellant has raised the same arguments as to both tests, and our discussion applies to both tests.
Appellant relies on two cases which have held that, because Luminol only establishes the possibility of the presence of blood, it has no probative value. Brenk v. State, 311 Ark. 579, 847 S.W.2d 1 (1993); State v. Moody, 214 Conn. 616, 573 A.2d 716 (1990). State v. Fukusaku, 85 Hawai`i 462, 946 P.2d 32 (1997), also cited by appellant, merely affirmed a trial court's ruling that the test was inadmissible, finding no abuse of discretion.
The state relies on Arrick v. State, 107 S.W.3d 710 (Tex.App.2003), in which it was *664 held that the fact that the test is only presumptive goes to the weight, not the admissibility. The court noted that defense counsel was able to demonstrate the limits of what the test establishes and that the test result would help the jury understand and weigh the evidence. The court further held that the probative value outweighed the possible unfair prejudice. In State v. Canaan, 265 Kan. 835, 964 P.2d 681 (1998), the Kansas Supreme Court also allowed Luminol tests, holding that the fact that it can react to other materials goes to its weight, not to its admissibility.
The result of a Luminol test has been admitted in Florida, Johnston v. State, 497 So.2d 863 (Fla.1986); however, the issue addressed in Johnston was whether the police officer who testified as to the Luminol test was qualified to do so. The court held that the defendant's objections to the qualifications of the officer went to the weight of his testimony, not his competency to testify as an expert.
Section 90.401, Florida Statutes (2003) defines relevant evidence as "evidence tending to prove or disprove a material fact." Although the state must prove its case beyond a reasonable doubt, that standard does not apply to each piece of evidence. Delap v. State, 440 So.2d 1242 (Fla.1983) (medical expert's opinion as to cause of death need not be within a reasonable medical certainty. It is still admissible, with the weight given it to be determined by the jury). Garland v. State, 834 So.2d 265 (Fla. 4th DCA 2002) (test showing trace amount of gunshot residue, which was not forensically significant, had probative value).
Relevancy determinations are within the trial court's discretion, Howard v. State, 616 So.2d 484 (Fla. 1st DCA 1993), and depend on the facts. Here, there was evidence that the victim had been shot by appellant in appellant's home and that there had been much blood. There was additional evidence that the surfaces on which the blood would have spattered were removed or cleaned within a day or two of the victim's disappearance. If there had been no such evidence, these tests might not have been relevant, or their relevancy might have been outweighed by the danger of unfair prejudice, confusion, or misleading the jury. § 90.403, Fla. Stat. (2003). In this case, however, we find no abuse of discretion in allowing the jury, which was aware of the limitations of the tests, to consider the evidence.
As to the other issues raised by appellant, we conclude that there was probable cause for the wire tap and that the court did not err in denying the motion to suppress the evidence obtained from it. Nor do we find error in allowing testimony as to the prior consistent statements of the state's primary witness.
Affirmed.
SHAHOOD and TAYLOR, JJ., concur.