Robert Lee MITCHEM *v.* STATE of Arkansas

CA CR 05-735                                    238 S.W.3d 623

Court of Appeals of Arkansas
Opinion delivered September 6, 2006

*Miller Law Firm,* by: *Randel Miller,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Kent G. Holt,* Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. A Craighead County jury convicted appellant Robert Lee Mitchem of attempted rape and kidnapping and sentenced him to a total of twenty years in the Arkansas Department of Correction. Appellant challenges his convictions arguing that the trial court erred in failing to grant his motion for directed verdict on the charge of attempted rape because the evidence was insufficient to prove that appellant took a substantial step toward the commission of the offense of rape. He also argues that the trial court erred in failing to grant a directed verdict on the charge of kidnapping because the evidence was insufficient to show that appellant restrained the liberty of the alleged victim. We find no error and affirm.

Appellant's argument relies heavily on disputed testimony. Therefore, we first set out the facts of this case that are not in dispute. The victim in this case, H.G., was thirteen (13) years old. On the afternoon of February 15, 2004, appellant, a fifty-one (51) year-old male, and H.G. had a telephone conversation, and the subject of the phone conversation was whether H.G. could go to the movies with appellant's daughter. H.G. obtained her mother's permission to go the movies. Appellant called H.G.'s home to obtain directions to the home. Shortly after receiving directions,

appellant picked up H.G. from her home in his car. When H.G. entered appellant's vehicle, she was the only passenger in the vehicle. Appellant explained his daughter's absence to H.G. by stating that his daughter was already at the movies and that he would take H.G. there; however, appellant did not take H.G. to the movies. Instead, appellant took H.G. to the Regency Inn in Jonesboro where he procured a motel room. Appellant escorted H.G. to the motel room and left her. At 9:35 p.m., Officer Landrum of the Jonesboro police department received a call from dispatch reporting a rape in progress at the Regency Inn. Officer Landrum went to the motel room and found H.G. crying and upset. Appellant was not in the motel room at that time. The police attempted to locate appellant and spoke to his daughter at appellant's home. After the police left appellant's home, appellant's daughter called appellant on his cell phone to tell him that the police were looking for him. Appellant called the police from the motel after his daughter's call, and officers proceeded to the motel where they arrested appellant.

On appeal and at trial, appellant emphasized the differences in the testimony regarding who initiated the call concerning the movies and the reason H.G. was at the hotel room. Appellant asserted that the State failed to demonstrate that H.G. was restrained in any way. He argued that she walked into the room without coercion, that appellant left the room about 7:00 p.m., and that he did not return until after the police had been summoned. During the time he was gone, the door was not bolted, a working telephone was in the room, and H.G. was free to leave. Appellant also argued that the evidence regarding the attempted rape charge was insufficient in that there was not a substantial step toward the commission of the crime of rape. He asserted that he did not touch H.G. sexually, he did not restrain her liberty, and otherwise took no action to engage in sexual intercourse or deviate sexual activity.

H.G. testified at trial that appellant explained to her that, before going to the movie, he first had to visit someone at the motel room. H.G. watched appellant procure the key and went to the room with appellant; however, no one was in the room. Once in the room, appellant told H.G. that this was where she would be staying and asked her if she had "ever done crystal meth." He then inquired if H.G. had a boyfriend and if she did, to ask him to come over. When she said she did not have a boyfriend, appellant stated that he intended to engage in sexual contact with H.G. He also

stated that he and his girlfriend had engaged in sex with another person earlier that day and he wanted H.G. to engage in such acts with them. He gave his watch to H.G. when he left saying that he would return with his girlfriend. H.G. said that she remained in the motel room because she was frightened by what the appellant might do if she tried to leave. She also testified that there were people outside the motel room and that she did not know if they were with appellant or not. Instead of leaving, she used the phone in the room to call a friend and told her what happened. As a result, her friend's mother called the police.

Officer Landrum testified that once he found the room where H.G. was located, he knocked on the door. H.G. was very upset and crying and only opened the door to the police after multiple requests and assurances that Officer Landrum and his fellow officer were in fact police. Officer Landrum described her as "obviously afraid," "very distraught," and "upset." Her tone of voice was frantic and her speech patterns were rapid. She told the officers that appellant had brought her to the motel room, that he wanted her to have sex with him and his girlfriend, and that he wanted her to use "meth." She appeared frantic and wanted to leave immediately, because she feared that appellant would return.

Officer Landrum also described his contact with appellant following the attempts to locate him. Officer Landrum said that appellant contacted the police and asked what was going on. The officer explained that appellant was a suspect in a case involving the abduction of a child and he requested that appellant come to the station. The appellant said that he would come to the station "in the morning" and that he was on his way to Paragould. Officer Landrum said that, while talking to appellant, he heard a train whistle over the telephone and dispatched a patrol unit back to the motel, which was near the railroad tracks. Police officers subsequently located appellant at the motel. Appellant had returned to the motel with his girlfriend who opened the door to the officers, who then arrested appellant. Appellant told Officer Landrum that the reason he had left H.G. at the hotel was that he did not have room for her and his girlfriend in the car. Officer Landrum described the car as a four door and capable of carrying more than one passenger.

Appellant's first witness was his daughter, A.M., who testified that H.G. had told her that she had used "meth" and "smoked pot" prior to the incident with her father. She also testified that she

was unaware that her father or her father's live-in girlfriend, Laura Eaton, had invited H.G. to the movie with her and another friend, and that her aunt had picked her up from the movies and returned her home. Neither her father nor his girlfriend were at home when she returned after the movie.

Appellant claimed that he had rented the motel room for his girlfriend's aunt. According to him, the aunt had been staying in his home, but wanted to have her boyfriend spend the night. Appellant did not believe that an overnight guest was a good example for his daughter, so he had procured a motel room earlier in the day. He further asserted, contrary to H.G., that H.G. initiated the call to his house, wanting to go to the movie with his daughter, and he merely returned her call to get directions to the home. He testified that once H.G. was in the car with him, that she refused to go to the movies, and, instead of taking her back home, he took her to the motel. In support of his argument, he emphasizes that he left her at the motel a sufficient amount of time to allow for the viewing of a movie and travel.

Appellant also called as a witness a life-long friend who testified that she was supposed to meet appellant later that evening at another establishment. She was ahead of schedule driving home when she happened to see appellant and H.G. going into the motel room. She drove into the parking lot, gained appellant's attention, and observed appellant talking with H.G. in the doorway before coming to talk with her. She and appellant then left and conducted their business, which consisted of appellant loaning the witness money. The State argues that this chance encounter thwarted appellant's original plan.

A motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Smith v. State,* 68 Ark. App. 106, 3 S.W.3d 712 (1999). When a defendant challenges the sufficiency of the evidence, we review the evidence in the light most favorable to the State, considering only the evidence that supports the guilty verdict, and will affirm the conviction if it is supported by substantial evidence. *Fairchild v. State,* 349 Ark. 147, 76 S.W.3d 884 (2002). Evidence is substantial, whether direct or circumstantial, if it is of sufficient force and character that, with reasonable certainty, it will compel a conclusion one way or the other and pass beyond mere speculation or conjecture. *Carmichael v. State,* 340 Ark. 598, 12 S.W.3d 225 (2000). We defer to the jury's determination on the matter of witness credibility. *Jones v. State,* 52 Ark. App. 179, 916 S.W.2d 766 (1996). Any inconsistencies in the

witnesses' testimony are for the jury to resolve. *Palmer v. State,* 60 Ark. App. 97, 959 S.W.2d 420 (1998).

We first consider appellant's argument that the trial court erred by not granting his motion for a directed verdict on the charge of criminal attempt to commit rape because there was not sufficient evidence that he attempted to engage in sexual intercourse or deviate sexual activity with H.G. A person commits rape if he engages in sexual intercourse or deviate sexual activity with a person who is less than fourteen years of age. Ark. Code Ann. § 5-14-103(3)(A) (Repl. 2006). To prove attempted rape, it must be shown that the defendant purposely engaged in conduct that constituted a substantial step in a course of conduct intended to culminate in the commission of rape. Ark. Code Ann. § 5-3-201 (Repl. 2006); *see also Rains v. State,* 329 Ark. 607, 953 S.W.2d 48 (1997). To be considered a substantial step toward the commission of a rape, a defendant's overt acts must be beyond mere preparation, and "must reach far enough toward accomplishment, toward the desired result, to amount to the commencement of consummation." 75 C.J.S. *Rape* § 34 (2002). That is, conduct is not a substantial step unless it is strongly corroborative of a person's criminal purpose. Ark. Code Ann. § 5-3-201(c).

While appellant's version of the events are in stark contradiction to the victim's description, the jury was not required to believe appellant's story that it was simply "foolish on [his] part not to just take her back home." *See Palmer, supra.* The testimony that he initiated a call to the victim, picked her up under false pretenses, isolated her in a motel room, told her that he intended to engage in sexual intercourse with her and that he also was bringing back his girlfriend to engage in sexual acts with the victim, and then returning to the motel room with his girlfriend goes beyond mere planning and preparation. Appellant had procured the victim. This evidence supports the jury determination that appellant had taken a substantial step toward engaging in sexual intercourse with a person under the age of fourteen.

Appellant's second argument challenges the sufficiency of the evidence regarding restraint. Arkansas Code Annotated section 5-11-102 (Repl. 2006) provides, in pertinent part:

> A person commits the offense of kidnapping if, without consent, the person restrains another person so as to interfere substantially with the other person's liberty with the purpose of:

. . .

(3) Facilitating the commission of any felony or flight after the felony;

(4) Inflicting physical injury upon the other person;

(5) Engaging in sexual intercourse, deviate sexual activity, or sexual contact with the other person;

(6) Terrorizing the other person or another person,

However, to support a separate charge for kidnapping in a case where a rape or attempted rape has been alleged also, it must be shown that the defendant employed some greater restraint on the victim than that normally incidental to rape. *Lee v. State,* 326 Ark. 529, 932 S.W.2d 756 (1996); *Wofford v. State,* 44 Ark. App. 94, 867 S.W.2d 181 (1993). A person acts purposely with respect to his conduct or a result thereof "when it is his conscious object to engage in conduct of that nature or to cause such a result." Ark. Code Ann. § 5-2-202(1) (Repl. 2006). In *Watson v. State,* 358 Ark. 212, 188 S.W.3d 921 (2004), our supreme court held:

> A criminal defendant's intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. Because intent cannot be proven by direct evidence, the jurors are allowed to draw upon their common knowledge and experience to infer it from the circumstances. Moreover, because of the obvious difficulty in ascertaining a defendant's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his or her acts.

*Watson,* 358 Ark. at 219-20, 188 S.W.3d at 925 (citations omitted).

Appellant submits that the facts in this case fail to show that H.G. was restrained so as to interfere with her liberty. He urges that the facts demonstrate that H.G. willingly entered the room, was not restrained, could have left the room at any time she chose, and had access to a working telephone. He also concludes that his staying away from the motel room indicates that he had no intent to restrain her liberty. He distinguishes his case from *Kirwan v.*

*State*, 351 Ark. 603, 96 S.W.3d 724 (2003), where a defendant traveled from another state to meet a fictional eleven-year-old child, who actually was an undercover police officer as a part of an internet sting operation, for the purpose of engaging in sexual relations. Appellant argues that the evidence in *Kirwan* left no other reasonable explanation for the defendant's conduct other than his intent to engage in sexual relations with the eleven-year-old child.

We agree that appellant's case is distinguishable from *Kirwan*; however, it was within the jury's province to evaluate appellant's testimony and the testimony of the victim to determine the facts. The jury was not required to accept appellant's version even if it found the version to be plausible or reasonable. The jury is not required to believe any witness's testimony, especially the testimony of the accused, because he is the person most interested in the outcome of the trial. *Winbush v. State,* 82 Ark. App. 365, 107 S.W.3d 882 (2003). The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Isom v. State,* 356 Ark. 156, 148 S.W.3d 257 (2004). Indeed, after a jury has given credence to a witness's testimony, this court does not disregard it unless it was "so inherently improbable, physically impossible, or so clearly unbelievable that reasonable minds could not differ thereon." *Id.* One eyewitness's testimony, moreover, is sufficient to sustain a conviction, and his testimony is not "clearly unbelievable" simply because it is uncorroborated or because it has been impeached. *Id.*

While appellant asserts that there was no evidence that he intended to restrain H.G., sufficient evidence supports the conclusion that appellant used deception to restrain the victim. Our definition of "restraint without consent" includes restraint by deception. Ark. Code Ann. § 5-11-101(A) (Repl. 2006). In the case of a person who is under the age of fourteen (14) years, the definition includes "without the consent of a parent . . . ." *Id.* The mother of H.G. relied upon the representation that appellant was taking H.G. to the movies with his daughter when she gave permission for H.G. to leave her home with appellant. H.G.'s mother did not consent to appellant escorting her daughter to a motel room at the Regency Inn. When H.G. realized appellant's daughter was not in the car, appellant assured H.G. that his daughter was waiting for H.G. at the movies, and he would take H.G. to meet her. Appellant then escorted H.G. to the motel room

under the guise of meeting someone briefly before meeting his daughter at the movies. Given the testimony, substantial evidence exists to support appellant's convictions; accordingly, we affirm.

BIRD and ROAF, JJ., agree.