## Tywan WINSTON *v.* STATE of Arkansas

CR 07-757                                                  269 S.W.3d 809

Supreme Court of Arkansas
Opinion delivered December 13, 2007

*James Law Firm*, by: *William O. "Bill" James, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Valerie Glover Fortner*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Tywan Winston appeals his capital-murder conviction following a jury trial in the Pulaski County Circuit Court. Winston's only point for reversal is that the trial court erred in denying his motion for a directed verdict, arguing that the State provided insufficient evidence to support his conviction. We find no error and affirm.

An appeal from a denial of a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Woolbright v. State*, 357 Ark. 63, 160 S.W.3d 315 (2004). Reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict was supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence that is forceful evidence enough to compel a conclusion one way or the other beyond speculation or conjecture. *Benson v. State*, 357 Ark. 43, 160 S.W.3d 341 (2004). The reviewing court views the evidence in the

light most favorable to the verdict, and considers only evidence that supports the verdict. *Clem v. State*, 351 Ark. 112, 117, 90 S.W.3d 428, 430 (2002).

A jury convicted Winston for committing capital murder. Under Arkansas law, a person commits capital murder if "[w]ith the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person." Ark. Code Ann. § 5-10-101(a)(4) (Repl. 2006). Premeditation and deliberation may be formed in an instant. *McFarland v. State*, 337 Ark. 386, 989 S.W.2d 899 (1999). Intent can rarely be proven by direct evidence; however, a jury can infer premeditation and deliberation from circumstantial evidence, such as the type and character of the weapon used; the nature, extent, and location of wounds inflicted; and the conduct of the accused. *Fudge v. State*, 341 Ark. 759, 20 S.W.3d 315 (2000).

Turning to the evidence in this case, Little Rock police officers responded to reports of a disturbance at an apartment complex in July 2006 and found the blood-covered body of Charles Davis, Jr. A short time later, police officers responded to a second disturbance report, which led them to find and arrest Winston naked, covered in blood, only four blocks from where Davis was murdered. Police officers found a pair of bloody shorts and a knife during later searches of the area where Winston was arrested.

Winston testified at trial that Davis was a trustee at juvenile detention facility where Winston was incarcerated, and following Winston's release they began a sexual relationship. Winston further testified that he wrote Davis repeatedly during later incarcerations, referring to Davis as his "dearest wife" and expressing his desire to continue their relationship upon his release. Winston claimed at trial that his letters were an attempt to keep Davis from exposing Winston as a homosexual.

Winston testified that he and Davis met soon after Winston's release from prison, and Davis drove them to his apartment on the night Davis was murdered. Once there, Winston undressed, but when Davis began kissing Winston, Winston told Davis to stop. According to Winston, his rejection angered Davis, and a fight ensued; his last memory was of Davis on top of him with a knife in his hand.

At trial, the State presented evidence that the blood on Winston and the pair of shorts that police officers found near the

site of his arrest matched Davis's DNA. Tests of blood on the knife police officers found also matched Davis's DNA. The State further offered evidence that the blade of the knife was consistent with Davis's forty-five stab and cut wounds.

The State presented two eyewitnesses to Winston's attack on Davis. Lisa Dusenberry testified that she was outside her apartment when she first heard a noise followed by a cry for help. Dusenberry testified that she observed what appeared to be a fight across the street from her location, and she called 911 after one of the individuals fell to the ground and the other stood over him, screaming. Once the attacker left the scene, Dusenberry ran across the street to offer aid. However, when she reached Davis he appeared dead, surrounded by blood.

Robert Franklin testified that he heard a loud crashing noise in the direction of the apartment next door, followed soon after by another sound of something hitting his front door. Looking outside his window, Franklin saw a black male standing over another black male, striking him repeatedly with what initially appeared to be his fist. Because of recent burglaries on the property, Franklin had previously installed a video camera that could be directed from inside his apartment. Franklin reported the disturbance to the police and began recording the attack. After it appeared that the attacker left, Franklin started to open his apartment door to go render aid to the victim. However, before doing so, Franklin said he saw the attacker return and begin "poking" the downed male, telling him to get up, and then "turn[ed] mad again and hit[ ] him a couple of more times." At this point, Franklin realized that the attacker was not hitting the victim with his fist but instead was stabbing him with a knife. Franklin also realized that the victim was Davis, his neighbor.

Franklin's testimony that Winston stabbed Davis, left for a time, and then returned to stab him repeatedly again clearly refutes Winton's claim that he acted out of passion and shows that Winton committed the murder with premeditation and deliberation. Winston's other arguments that substantial evidence did not support his capital-murder conviction for murdering Davis with premeditation and deliberation can be dispensed with quickly. He argues that the State presented no evidence that he acquired the knife prior to killing Davis or that he brought the knife to Davis's apartment, and this equates to a lack of evidence that he murdered Davis with premeditation and deliberation. This argument is

without merit because "premeditation and deliberation may be formed in an instant." *McFarland, supra.* Winston also contends that his letters to Davis do not reveal a "prior desire" to kill Davis and show a lack of premeditation and deliberation. Although this court has affirmed capital-murder convictions when a defendant made past statements about his desire to kill the victim, *see Lloyd v. State,* 332 Ark. 1, 962 S.W.2d 365 (1998), premeditation and deliberation do not require announcement of murderous intentions.

Winston also argues that evidence of the wounds he inflicted upon Davis show "shock, indecision, or something else" other than premeditation and deliberation. The State presented testimony by a forensic pathologist on the nature and extent of Davis's forty-five stab and cut wounds. While the majority of these wounds were described as "easily treatable and very likely survivable," the jury also heard testimony that the likely cause of Davis's death was due to a stab wound to his heart and two stab wounds to his lungs. From the nature, extent, and number of the wounds inflicted on Davis, a jury could infer the premeditation and deliberation necessary to support a capital-murder conviction.

Finally, Winston's argument that he did not attempt to hide his bloody shorts and the knife used to kill Davis — indicating a lack of premeditation and deliberation — is also without merit. Evidence presented at trial showed that Winston fled the crime scene covered in Davis's blood, removed his shorts and dropped the knife at some point, and attempted to kick his way into a home four blocks away before the police arrested him. A jury could determine that these actions constituted an attempt to flee from arrest and consider it as a factor in determining his guilt. *See Davis v. State,* 365 Ark. 634, 232 S.W.3d 476 (2006) (citing *Jones v. State,* 314 Ark. 289, 863 S.W.2d 242 (1993)).

Here, the State's evidence supports Winston's capital-murder conviction. The evidence presented at trial shows that Winston murdered Davis. The State presented testimony to the jury describing how Winston stabbed Davis repeatedly, walked away, and then returned to stab him again. This testimony, in addition to other evidence showing the nature, location, and extent of the forty-five knife wounds to Davis allowed a jury to reasonably infer that Winston murdered Davis with the premeditation and deliberation required to sustain a capital-murder conviction.

Examination of the record for all objections, motions, and requests made by either party decided adversely against Winston, as required under Ark. Sup. Ct. R. 4-3(h), shows no prejudicial error. *Doss v. State*, 351 Ark. 667, 97 S.W.3d 413 (2003).