Deandra Laron STEPHENSON *v.* STATE of Arkansas

CR 07-1080                                          282 S.W.3d 772

Supreme Court of Arkansas
Opinion delivered April 10, 2008

*James Law Firm,* by: *William O. "Bill" James, Jr.,* for appellant.

*Dustin McDaniel,* Att'y Gen., by: *David R. Raupp,* Sr. Ass't Att'y Gen., for appellee.

Donald L. Corbin, Justice. Appellant Deandra Laron Stephenson appeals the judgment and commitment order

of the Pulaski County Circuit Court convicting him of two counts of capital murder and one count of a terroristic act, for which he was sentenced to consecutive terms of life imprisonment and forty-five years, respectively. On appeal, Appellant raises one argument for reversal: the circuit court erred in denying his motion for directed verdict when the State failed to provide sufficient evidence to prove Appellant committed two capital murders and a terroristic act. As Appellant received a life sentence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and affirm.

On July 1, 2006, Lademon Taylor, Christopher Taylor, and Leslie Harper went shopping at McCain Mall in North Little Rock, Arkansas. While Lademon and Christopher were in a store, Harper went to get a drink when he bumped into Rashon McKinney who was playing with and looking at his cell phone. After a brief conversation about what Harper was doing and who he was with, the two parted ways and Harper met back up with the others. They then exited the mall and got in their car to leave. Immediately after sitting down in their vehicle, multiple shots were fired into the car hitting all three occupants. The shooter then jumped into the passenger seat of another car and drove off. Harper managed to get out of the car and was taken to the hospital by a mall patron whom he stopped in the parking lot. When the North Little Rock police arrived on the scene, Lademon and Christopher were dead inside the car.

Following an investigation into the shooting, on September 29, 2006, Appellant was charged with two counts of capital murder, pursuant to Ark. Code Ann. § 5-10-101 (Repl. 2006), and one count of a terroristic act, pursuant to Ark. Code Ann. § 5-13-310 (Repl. 2006).[1] The felony information also stated that the sentences received for committing these crimes should be increased for each offense in accordance with Ark. Code Ann. § 16-90-120 (Repl. 2006). On March 5, 2007, Appellant filed a motion for recusal, which the circuit court addressed and denied prior to trial.

Appellant's trial began on March 12, 2007, during which the State called multiple witnesses, including Appellant's accomplices Norman Dednam and McKinney. During Dednam's testimony, he

---

[1] Rashon McKinney and Norman Dednam were also arrested and charged with the same crimes as Appellant.

identified Appellant as the shooter.[2] Specifically, he explained that he was driving through the mall parking lot when Appellant told him to stop the car. Upon stopping, Appellant exited the vehicle and began shooting into the victims' car. Furthermore, McKinney testified that, after running into Harper, he called Appellant and told him that Lademon, Christopher, and Harper were at the mall.[3] McKinney explained that he called Appellant because he had heard about Lademon and Harper robbing Appellant earlier that week.

At the close of the State's evidence, Appellant moved for a directed verdict on all charges based upon the State's failure to provide substantial evidence to support the crimes. Specifically, he argued that the testimony of the accomplices had not been corroborated by independent evidence tying Appellant to the crimes. The circuit court denied Appellant's motions. After the defense rested, Appellant renewed his motions for directed verdict based upon his previous arguments. The circuit court again denied his motions. Following deliberations, the jury found Appellant guilty of two counts of capital murder and one count of a terroristic act. This appeal followed.

On appeal, Appellant renews his challenge to the sufficiency of the evidence. Specifically, he asserts that the circuit court erred in denying his motion for directed verdict because his conviction was based upon uncorroborated accomplice testimony. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circum-stantial. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Id.*

As stated earlier, Appellant was convicted of two capital murders and a terroristic act. Under Arkansas law, a person

---

[2] Dednam had been offered a plea agreement by the State of thirty years' imprison-ment, which he rejected, and he testified against the advice of his lawyer while awaiting trial in his own case stemming from the shooting.

[3] In exchange for his testimony, McKinney pled guilty to a charge of hindering apprehension and received a sentence of twenty years' imprisonment. The two capital murder charges and the terroristic act charge were dropped against him.

commits capital murder if "[w]ith the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person." Ark. Code Ann. § 5-10-101(a)(4). Premeditation and deliberation may be formed in an instant. *Winston v. State*, 372 Ark. 19, 269 S.W.3d 809 (2007). Intent can rarely be proven by direct evidence; however, a jury can infer premeditation and deliberation from circumstantial evidence, such as the type and character of the weapon used; the nature, extent, and location of wounds inflicted; and the conduct of the accused. *Id.*

Additionally, a person commits a terroristic act if, while not in the commission of a lawful act, and with the purpose of causing injury to persons or property, he shoots at a vehicle that is being operated or that is occupied by another person. *See* Ark. Code Ann. § 5-13-310(a)(1). Moreover, a person who commits a terroristic act is guilty of a Class Y felony "if the person with the purpose of causing physical injury to another person causes serious physical injury or death to any person." Ark. Code Ann. § 5-13-310(b)(2).

When accomplice testimony is considered in reaching a verdict, Arkansas law provides that a person cannot be convicted based upon the testimony of an accomplice "unless corroborated by other evidence tending to connect the defendant . . . with the commission of the offense." Ark. Code Ann. § 16-89-111(e)(1)(A) (Repl. 2006). Furthermore, "corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof." Ark. Code Ann. § 16-89-111(e)(1)(B). It must be evidence of a substantive nature since it must be directed toward proving the connection of the accused with a crime and not toward corroborating the accomplice testimony. *Green*, 365 Ark. 478, 231 S.W.3d 638. The corroborating evidence need not be sufficient standing alone to sustain the conviction, but it must, independent from that of the accomplice, tend to connect to a substantial degree the accused with the commission of the crime. *Id.* The test is whether, if the testimony of the accomplice were completely eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Id.* The corroborating evidence may be circumstantial so long as it is substantial; evidence that merely raises a suspicion of guilt is insufficient to corroborate an accomplice's testimony. *Id.*

In the present case, Appellant claims that there was insufficient evidence that he caused the death of another person as well as that he projected an object at a conveyance. Appellant does not dispute that shots were fired into a vehicle occupied by three individuals, which killed the driver and the back-seat passenger as well as wounded the front-seat passenger. Rather, he argues that there was no evidence that he was present at the scene of the crime or that he was the shooter. In support of this argument, Appellant asserts that the only evidence presented that he fired the shots, which constituted the criminal act, was the unreliable testimony of an accomplice to the crime who was testifying in hopes of a lenient offer from the State. Specifically, he asserts that Dednam, an accomplice, was the only person in the case to identify Appellant as the shooter and that Dednam was the only person who placed Appellant at the scene of the crime. He further argues that the only evidence tending to corroborate Dednam's testimony was that of McKinney, another accomplice. We disagree and hold that, after eliminating both accomplices' testimony, there is sufficient evidence that tends to connect Appellant to the commission of the crimes.

First, other testimony and evidence presented by the State established that Appellant was present at the scene of the crime and that he was the shooter. Samuel White, an eyewitness who is also a retired deputy sheriff, testified that he saw a black male wearing dark clothing, who was at a minimum five feet tall and definitely not six feet, shooting into the victims' car. Detective Michael Gibbons testified that of all the people arrested for the murders only Appellant matched White's description of the shooter. Specifically, only Appellant is under six feet tall.

Furthermore, Harper also testified that when he ran into McKinney at the mall, McKinney was playing with and looking at his cell phone. The State introduced evidence, including subpoenaed phone records[4], of calls that occurred between Appellant and McKinney immediately prior to the shooting. Specifically, Detective Gibbons testified about two phone calls between Appellant and McKinney shortly before the shooting. He explained that the

---

[4] Appellant's name is not the name on the subscriber information for the cell-phone account, but rather it is his grandmother's name. However, the phone number associated with the account is the one Appellant gave as part of his intake information. Consequently, the circuit court ruled that the number was admissible as Appellant's.

phone records showed a call between Appellant's number and McKinney's number at 1:20 p.m. lasting for two minutes and seventeen seconds and a second call at 1:24:30 p.m. lasting for one minute and twenty-four seconds. Detective Gibbons further testified that this last call occurred just two minutes before the first 911 call reporting the shooting, which was received at 1:28 p.m. We hold that the foregoing testimony tends to connect Appellant to the crimes for which he was convicted as it is sufficient to show not only that he was present at the scene of the crime, but also that he was the shooter.

Second, testimony was presented that Appellant asked a family member to lie to the police about his whereabouts the day of the shooting. This court has repeatedly held that false statements to the police may constitute corroborating evidence. *MacKool v. State*, 365 Ark. 416, 231 S.W.3d 676 (2006); *McGehee v. State*, 348 Ark. 395, 72 S.W.3d 867 (2002). Moreover, we have held that a family member's testimony that he or she was asked to lie about an appellant's whereabouts during the commission of a crime is sufficient to connect the appellant to the crimes as well as corroborate an accomplice's testimony. *See Green*, 365 Ark. 478, 231 S.W.3d 638. We have further held that the jury is not required to lay aside its common sense in evaluating the ordinary affairs of life. *MacKool*, 365 Ark. 416, 231 S.W.3d 676.

Here, Felicia Taylor, Appellant's aunt, testified that the day after the shooting, a Sunday, she received a phone call from the North Little Rock police department asking her to come down and talk to them. She explained that, prior to speaking with the police, she spoke to Appellant who told her that he had to go down to the police station as well. Shortly thereafter, Appellant asked her to tell the police that he had been with her from Friday night until late afternoon on Saturday. Taylor then testified that she went to the police department and gave a statement that Appellant had spent the night at her house on Friday and that he was with her until she took him to his mother's house around 4 p.m. on Saturday. She further testified that she lied to the police because she loves her nephew and he had asked her to do him a favor, but that after finding out that a double homicide had occurred she could no longer do so. Here, the jury may well have considered Taylor's testimony as to lying at her nephew's request to be corroborative of his guilt.

Finally, Harper testified that he and Lademon had stolen drugs, rims, and a box of pennies from Appellant's home less than

a week before the shooting. While not related to the actual shooting, the testimony can be linked to a motive for the shooting and is indicative of premeditation. Moreover, we have held that proof of ill will is sufficient to corroborate an accomplice's testimony. *See McGehee*, 348 Ark. 395, 72 S.W.3d 867.

Based upon the foregoing, there is sufficient evidence, absent the accomplices' testimony, connecting Appellant to the crimes such that the circuit court did not err in denying his motion for a directed verdict.

In accordance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Appellant, and no prejudicial error has been found. Nevertheless, we feel it necessary to briefly address an issue of concern discovered during our review of the record.

■ Prior to trial, Appellant filed a motion for recusal of the circuit judge based upon his attendance and prayer during a family hour for one of the victims. Specifically, Appellant argued that the circuit judge may have an interest in the case as well as that there is an appearance of bias. It is well settled that a judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities. Ark. Code Jud. Conduct Canon 2; *Elmore v. State*, 355 Ark. 620, 144 S.W.3d 278 (2004). Recusal is required when a judge's impartiality might reasonably be questioned. Ark. Code Jud. Conduct Canon 3(E)(1); *Barritt v. State*, 372 Ark. 395, 277 S.W.3d 211 (2008). We have also held that the decision to recuse is within the circuit court's discretion, and we will not reverse absent an abuse. *Barritt*, 372 Ark. 395, 277 S.W.3d 211. Moreover, the question of bias is usually confined to the conscience of the judge. *Davis v. State*, 367 Ark. 341, 240 S.W.3d 110 (2006).

In this case, the circuit judge explained that he did not know any of the victims or any of the defendants and that his prayer included a prayer for both the victims and the perpetrators of the crime. Thus, we are satisfied that there was no abuse of discretion in the circuit judge's refusal to recuse.

Affirmed.