2009 Ark. App. 602

**Charles Kevin WOODSON, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 08–1491.**

Court of Appeals of Arkansas.

Sept. 23, 2009.

C. Scott Nance, Newport, for appellant.

Atty. Gen., by: Karen Virginia Wallace, for appellee.

ROBERT J. GLADWIN, Judge.

Appellant Charles Woodson appeals his September 17, 2008 conviction by a Randolph County jury on charges of commercial burglary, arson of property worth at least $100,000, and misdemeanor theft of property. He was sentenced to a total of twenty years' imprisonment in the Arkansas Department of Correction. Appellant's sole argument on appeal is that the circuit court erred in denying his motion for directed verdict. We affirm.

## Facts

On November 8, 2007, law-enforcement officers initiated an investigation regarding a fire that had occurred the previous evening at 166 Café. The investigating officers determined that a forced entry into the building was made through the removal of an air-conditioning unit and that the point of origin of the fire was inside the restaurant in the area between the register and a desk behind the counter. Officers also discovered spots adjacent to the point of origin where the floor material

had burned more significantly than other parts of the floor, possibly indicating the use of accelerants. A one-gallon Crown White fuel can was found near the building, and debris from the burned area tested positive for ethanol and a medium-based alkene product, such as candle oil or some type of lighter fluid. A small pry-bar was found near the cash-register, and a saw was discovered on top of the air-conditioning unit. The tray from the cash-register drawer was also missing and was never recovered.

Officers received information indicating that Ms. Patsy Adams and Ms. Sandra (a/k/a Sissy) Wilson had been observed at the location of the 166 Café around midnight on the night of the fire. Officers interviewed Ms. Adams and Ms. Wilson, which prompted them to speak with Ms. Lucinda (a/k/a Cindy) Burleson, Ms. Christina Luther, and appellant. All four women initially denied any involvement or knowledge of the incident, but officers eventually learned that the saw discovered at 166 Café belonged to Ms. Adams. Ms. Adams subsequently admitted her involvement and agreed to cooperate in the investigation.

Additionally, Ms. Wilson—appellant's cousin who at the time was on parole—also agreed to assist in the investigation by allowing officers to place a digital-recording device in her vehicle to record conversations between appellant and herself. She drove to appellant's residence and picked him up, while at the same time Special Agent Wendel Jines and Deputy Jim Milam were listening to the conversation in their vehicle. Ms. Wilson asked appellant whether he retrieved the Coleman can (meaning the Crown White can), and they discussed items from which appellant wiped fingerprints and buried in the woods.

Ms. Wilson admitted to being with appellant, Ms. Burleson, Ms. Luther, and Ms. Adams on the night of the fire at the home she shared with Ms. Burleson. She explained that, after having dinner and playing darts, she went with Ms. Adams and appellant to Ms. Adams's house. Ms. Wilson testified that she noticed Ms. Adams drawing something that turned out to be the floor plan of 166 Café—where Ms. Adams had previously worked. Appellant indicated to her that he planned to rob 166 Café. After indicating that she did not want to be involved, Ms. Wilson agreed to go with Ms. Adams and appellant to get cigarettes. Appellant took a hand saw from Ms. Adams's residence with him on the errand.

Ms. Wilson testified that Ms. Adams drove to 166 Café, during which time she noticed that Ms. Adams and appellant had walkie-talkies. Ms. Adams dropped appellant off at a house just past the Café, and he took the saw and walkie-talkie with him. The two women left, drove to the store, bought cigarettes, and returned to pick up appellant. When they did not see him, they parked a little way up the road from 166 Café. Approximately one hour after dropping him off, appellant contacted them via the walkie-talkie, and as Ms. Adams pulled in near 166 Café, Ms. Wilson noticed officers approaching. The two women alerted appellant via the walkie-talkie and then pulled up to the officer's vehicle. Ms. Adams explained that her car was overheating and they were getting water. At the conclusion of the conversation, the two women returned to Ms. Adams's house.

Subsequently, Ms. Wilson and Ms. Adams went back to search for appellant, but returned to Ms. Wilson's house at approximately 4:00 a.m. after having no success in locating him. Upon their arrival, appellant came out the back door, bloody

and scratched from having run through the woods, through barbed wire, and into a tree. He indicated that he had "tore up the cash register and stuff up." Upon Ms. Adams's urging that something had to be done, appellant stated that "the only thing I can do is torch the place." Ms. Wilson then drove them to Ms. Adams's house, where Ms. Adams retrieved the Crown White fuel can and gave it to appellant. Ms. Wilson then drove to 166 Café where appellant left with the fuel can. After the women drove around a few minutes, appellant jumped back into the vehicle. Ms. Wilson took Ms. Adams to her house, and she and appellant returned to hers. The following morning, appellant told Ms. Wilson he had taken about $200 and some jewelry but had stashed it out in the woods.

Ms. Adams gave a similar account of the incident, adding information about appellant taking the saw, pry-bar, and Crown White fuel can from her house. She indicated that when he got out of the vehicle with rubber gloves, the pry-bar, the saw, and a flashlight, there was no question in her mind that he was planning to rob 166 Café. She indicated that she told appellant that he had to take back what he had stolen. Subsequently, appellant indicated to Ms. Adams that he had gotten some money, but not how much, and that he had hidden it in the woods.

It is undisputed that both Ms. Wilson and Ms. Adams were charged in this case and were accomplices in the incident. Both negotiated deals with the State that spared them from serving any jail time.

Ms. Burleson, Ms. Wilson's roommate, testified that she was with Ms. Wilson, Ms. Adams, and appellant earlier on the night of November 7, 2007, but that she went to bed early. She stated that she was unaware of what had occurred until the following morning when she saw appellant's injuries and heard his account of the incident. She stated that appellant told her that the robbery was Ms. Adams's idea. Ms. Burleson also overheard appellant telling Ms. Adams that he had only taken about $200. She also discussed the issue of fingerprints being discovered, and explained that appellant assured her that only Ms. Adams's fingerprints might be discovered on her saw that he had left at the scene. Ms. Burleson testified that she also witnessed Ms. Wilson burn the map of 166 Café that was in Ms. Adams's handwriting.

Although she initially lied to police to try to protect Ms. Wilson, Ms. Burleson also agreed to wear a recording device. Apparently the equipment she used was faulty, and officers were unable to obtain sufficient information from her attempt. She was not charged in this incident, even for obstruction of justice related to her initial lies to police; however, she may have received a lighter sentence on a methamphetamine charge in another county because of her cooperation.

Ms. Luther testified that she saw appellant around 8:00 a.m. on November 8, 2007. He explained to her that the gash between his nose and two black eyes occurred when he was leaving 166 Café and ran under a barbed-wire fence. Appellant admitted that he broke into 166 Café and that he ran from the building after Ms. Wilson alerted him via the walkie-talkie that the police were approaching. He admitted to Ms. Luther that he stole several hundred dollars and explained that he left a saw that would have Ms. Adams's fingerprints on it. Ms. Luther acknowledged that she initially lied to law-enforcement officers in an attempt to protect Ms. Wilson. She was not charged in this case and claimed that she was not offered a deal in exchange for testifying.

Additionally, at the jury trial held on September 16–17, 2007, Jean Grissom, owner of the business part of 166 Café, testified that a $121,000 loss resulted from the fire. Irma Jean Taylor, owner of the building that housed 166 Café, testified that a $61,538.92 loss resulted from the fire.

After the State rested, appellant's counsel moved for a directed verdict on various charges arguing, that the State failed to prove—other than through the testimony of co-defendants—that appellant had the intent to commit a theft while in 166 Café or that anything was actually stolen from that location. The same argument was made with respect to the charges of arson and theft of property, specifically that no evidence beyond the testimony of the two co-defendants supported the charges. Additionally, with respect to the arson charge, appellant's counsel argued that the State failed to lay a proper foundation to establish that Ms. Grissom and Ms. Taylor were qualified to testify as to the value of the monetary loss incurred. The circuit court denied the motions.

The defense rested without presenting any witnesses and reasserted the motion for directed verdict on the same grounds. The circuit court again denied the motion. The jury returned guilty verdicts on all counts, and appellant was sentenced as previously set forth. The judgment and commitment order was filed on September 17, 2007. Appellant filed a timely notice of appeal on October 14, 2007, and this appeal followed.

## I.  Denial of Motion for Directed Verdict

### A.  Standard of Review

A motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* On appeal, we view the evidence in the light most favorable to the State, considering only that evidence that supports the verdict. *Id.*

Weighing the evidence and assessing the credibility of the witnesses are matters for the fact-finder. *Bush v. State*, 90 Ark. App. 373, 206 S.W.3d 268 (2005). The jury is free to believe all or part of any witness's testimony and resolves questions of conflicting testimony and inconsistent evidence. *See Gikonyo v. State*, 102 Ark. App. 223, 283 S.W.3d 631 (2008). Reconciling conflicts in the testimony and weighing the evidence are matters within the exclusive province of the jury. *See Mitchem v. State*, 96 Ark. App. 78, 238 S.W.3d 623 (2006).

### B.  Discussion

Arkansas Code Annotated section 16–89–111(e)(1)(A) (Repl.2005) provides that

a conviction or an adjudication of delinquency cannot be had in any case of felony upon the testimony of an accomplice, including in the juvenile division of circuit court, unless corroborated by other evidence tending to connect the defendant or the juvenile with the commission of the offense.

Additionally, subsection (B) states that the corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof. It must be evidence of a substantive nature since it must be directed toward proving the connection of the accused with a crime and not toward corroborating the accomplice testimony.

*Stephenson v. State,* 373 Ark. 134, 282 S.W.3d 772 (2008). The corroborating evidence need not be sufficient standing alone to sustain the conviction, but it must, independent from that of the accomplice, tend to connect to a substantial degree the accused with the commission of the crime. *Id.*

The test is whether, if the testimony of the accomplice were completely eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Stephenson, supra.* The corroborating evidence may be circumstantial so long as it is substantial; evidence that merely raises a suspicion of guilt is insufficient to corroborate an accomplice's testimony. *Id.* The presence of an accused in the proximity of a crime, opportunity, and association with a person involved in the crime in a manner suggestive of joint participation are relevant facts in determining the connection of an accomplice with the crime. *Passley v. State,* 323 Ark. 301, 915 S.W.2d 248 (1996).

Appellant maintains that there was no direct evidence, other than the self-serving circumstantial testimony of the State's witnesses that support charges that he committed any crime on November 7, 2007. He urges that all of the witnesses for the State were admitted accomplices to the crime. He reminds us that each of them admitted repeatedly lying to law-enforcement officers. He suggests the State's main witnesses were under the influence of methamphetamine at the time of their involvement in the 166 Café incident. Further, he claims that it is not hard to ascertain that their testimony was "bought" by the authorities in exchange for leniency. As such, he urges that his convictions are not supported by substantial evidence.

We disagree. First, we note that the jury was instructed that both Ms. Wilson and Ms. Adams were accomplices in this case. The testimony of both Ms. Wilson and Ms. Adams clearly implicates appellant in the incident, but there is sufficient corroborating evidence from other witnesses to support each of the respective charges.

### (1) Commercial Burglary

With respect to the commercial-burglary conviction, Arkansas Code Annotated section 5–39–201(b)(1) (Repl.2006) provides that a person commits commercial burglary if he or she enters or remains unlawfully in a commercial occupiable structure of another person with the purpose of committing in the commercial occupiable structure any offense punishable by imprisonment. In this case, there was a commercial burglary that occurred, as testified to by Special Agent Jines. He explained that the restaurant had been forcibly entered, and that a saw and pry-bar were found in and around the building. He also testified that the money tray from the cash-register drawer was missing and never found.

Additional testimony that corroborated that of Ms. Wilson and Ms. Adams came from Ms. Burleson, who was not charged as an accomplice in this case. She testified that appellant told her the morning after the robbery that the incident was Ms. Adams's idea. She also explained that she overheard appellant telling Ms. Adams that he had taken about $200. She testified that she also discussed the issue of fingerprints being discovered on items used in the robbery and that appellant assured her that only Ms. Adams's fingerprints might be discovered on her saw that he had left at the scene. Ms. Burleson stated that she witnessed Ms. Wilson burn the map of 166 Café that was in Ms. Adams's handwriting.

Another non-accomplice witness, Ms. Luther, testified that she saw appellant around 8:00 a.m. on November 8, 2007. Ms. Luther testified that appellant explained that the gash between his nose and two black eyes occurred when he was leaving 166 Café and ran under a barbed-wire fence. She stated that appellant admitted to her that he broke into 166 Café and that he ran from the building after Ms. Wilson alerted him via the walkie-talkie that police officers were approaching. He admitted to her that he stole several hundred dollars and explained that he left a saw at the scene that would have Ms. Adams's fingerprints on it.

When viewed in the light most favorable to the State, substantial evidence supports appellant's conviction on the charge of commercial burglary. Accordingly, we affirm on this count.

### (2) Arson

■ With respect to the arson conviction, Arkansas Code Annotated section 5–38–301(a)(1)(A) (Supp.2007) provides that a person commits arson if he or she starts a fire or causes an explosion with the purpose of destroying or otherwise damaging an occupiable structure or motor vehicle that is the property of another person. Subsection (b)(6) provides that arson is a Class Y felony if the property sustains damage in an amount of at least $100,000.

The physical evidence discovered by law-enforcement officers, as well as Special Agent Jines, supports the conclusion that 166 Café was destroyed by arson. In addition to the evidence of forcible entry, officers determined that the point of origin of the fire was inside the restaurant, centered in the area between the register and a desk behind the counter. The cash register was heavily damaged by the fire and heat. Officers also discovered spots adjacent to the point of origin where the floor

material had burned more significantly than other parts of the floor, possibly indicating the use of accelerants. A one-gallon Crown White gas fuel can was found near the building, and debris from the burned area tested positive for ethanol and a medium-based alkene product, such as candle oil or some type of lighter fluid. Although the testing did not indicate the presence of camp fuel, Special Agent Jines testified that it could have completely burned up in the fire and that he found no source of accidental ignition. He specifically testified that based upon his training and experience as an arson investigator, he did not believe that the fire was "in any way" accidental.

■ Specific evidence as to the value of the monetary loss incurred as a result of the arson was presented at trial. Ms. Grissom, who owned the business part of 166 Café, testified that a $121,000 loss resulted from the fire. Additionally, Ms. Taylor, owner of the building that housed 166 Café, testified that a $61,538.92 loss resulted from the fire. Although the preferred method of establishing value is through expert testimony, *see Coley v. State*, 302 Ark. 526, 790 S.W.2d 899 (1990), it is also well settled that an owner of property is competent to testify as to the value of his own property. *See Sullivan v. State*, 32 Ark. App. 124, 798 S.W.2d 110 (1990).

Although the physical evidence and testimony from Special Agent Jines did not specifically connect appellant with the arson, when viewed in conjunction with the accomplice testimony from Ms. Wilson and Ms. Adams and appellant's own admissions regarding the robbery to Ms. Burleson and Ms. Luther, there was sufficient evidence for the jury to conclude that appellant did in fact commit arson. While this evidence is not as strong as the evidence supporting the burglary and theft convictions, in that appellant denied blame in the transcript of

the recorded conversation between Ms. Wilson and himself on February 4, 2008, we also note that he expressed his hope that law-enforcement officers would focus on another suspect who had been involved in several area arson cases. Additionally, appellant specifically stated in that transcribed conversation that he wiped his fingerprints off of the fuel can and buried it in the woods.

### (3) Theft of Property

Regarding the misdemeanor-theft-of-property charge, Arkansas Code Annotated section 5–36–103(a)(1) (Supp.2007) provides that a person commits theft of property if he or she knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner of the property. Theft of property is a misdemeanor if the value of the property is $500 or less. See Ark.Code Ann. § 5–36–103(b)(4)(A) (Supp.2007).

Special Agent Jines testified that the money tray of the cash-register drawer was missing and never recovered, although he could not specify how much, if any, money had been in the tray at the time it was taken. Appellant was overheard by Ms. Burleson telling Ms. Adams that he only got a couple hundred dollars from 166 Café, and Ms. Luther testified that he specifically told her that he stole several hundred dollars from 166 Café. We hold that sufficient corroborating evidence exists with respect to the theft-of-property charge, and we affirm that conviction as well.

Affirmed.

GLOVER and HENRY, JJ., agree.