
# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR-13-978

| | |
|---|---|
| DERRICK LAMONT BOOTH<br>APPELLANT | **Opinion Delivered** October 22, 2014 |
| V. | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION<br>[NO. 60CR-12-3455] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE WENDELL L. GRIFFEN, JUDGE |
| | AFFIRMED |

## WAYMOND M. BROWN, Judge

On October 5, 2012, at around 4:20 p.m., Little Rock firemen were dispatched to 3 Althea Circle, the address of a house owned by Jacqueline Booth-Clark, appellant's wife. When the firemen arrived at the house, light smoke was coming from a bedroom on the right side of the residence. The house's doors were locked and the windows were closed. The firemen entered the house by breaking down the front door, and extinguished a fire they found inside a bedroom. The door to this bedroom had been shut.

A jury trial was held on July 9–10, 2013. At trial, appellant moved for a directed verdict at the close of the State's case alleging that the State failed to present sufficient evidence that he set a fire at his wife's home.[1] His motion was denied. At the close of all

---

[1] While appellant and his wife, who was the owner of the home, were married, they were separated at the time of the fire. At the time of the fire, appellant's wife was living with her mother and appellant was living in the home.

the evidence, appellant renewed his motion. The court again denied his motion. The jury found appellant guilty of Class A felony arson. In the sentencing phase, the jury could not reach a sentencing verdict. In lieu of the jury sentencing appellant, the circuit court judge sentenced him, as a habitual offender, to serve twelve years' imprisonment. A sentencing order reflecting the same was entered on July 24, 2013. It is from this order that appellant timely appeals.

Appellant argues that the circuit court erred by not directing a verdict in his favor on the arson charge. The State argues that the circuit court correctly denied the appellant's directed-verdict motion because there was sufficient evidence to convict him of arson.

A motion for directed verdict is a challenge to the sufficiency of the evidence.[2] In a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence that supports the conviction.[3] In reviewing a challenge to the sufficiency of the evidence, this court determines whether the verdict is supported by substantial evidence, direct or circumstantial.[4] Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture.[5] We affirm a conviction if

---

[2]*Washington v. State*, 2010 Ark. App. 596, at 6, 377 S.W.3d 518, 522 (citing *Tryon v. State*, 371 Ark. 25, 263 S.W.3d 475 (2007)).

[3]*King v. State*, 2014 Ark. App. 81, at 2, 432 S.W.3d 127, 129 (citing *Daniels v. State*, 2012 Ark. App. 9, at 1–2).

[4]*Laswell v. State*, 2012 Ark. 201, at 4, 404 S.W.3d 818, 823 (citing *Smoak v. State*, 2011 Ark. 529, 385 S.W.3d 257.).

[5]*King, supra* (citing *Heydenrich v. State*, 2010 Ark. App. 615, 379 S.W.3d 507).

SLIP OPINION

substantial evidence exists to support it.[6] The trier of fact resolves the questions of conflicting testimony, inconsistent evidence, and credibility.[7] We will disturb the jury's determination only if the evidence did not meet the required standards, thereby leaving the jury to speculation and conjecture in reaching its verdict.[8]

For circumstantial evidence to be relied on, it must exclude every other reasonable hypothesis other than the guilt of the accused, or it does not amount to substantial evidence.[9] The question of whether circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the fact-finder to decide.[10] On review, this court must determine whether the fact-finder resorted to speculation and conjecture in reaching the verdict.[11]

Appellant was charged with arson. A person commits arson if he or she starts a fire with the purpose of destroying or otherwise damaging an occupiable structure that is the property of another person.[12] Appellant contends that the circuit court erred in denying

---

[6]*Harris v. State*, 2014 Ark. App. 448, at 2, ___ S.W.3d ___, ___ (citing *Ali v. State*, 2011 Ark. App. 758).

[7]*King, supra* (citing *Daniels*, 2012 Ark. App. 9).

[8]*Laswell, supra*, 2012 Ark. 201, at 4, 404 S.W.3d at 822 (citing *Ellis v. State*, 2012 Ark. 65, 386 S.W.3d 485).

[9]*Brawner v. State*, 2013 Ark. App. 413, at 6, 428 S.W.3d 600, 605 (citing *Lowry v. State*, 364 Ark. 6, 216 S.W.3d 101 (2005)).

[10]*Id.*

[11]*Id.*

[12]Ark. Code Ann. § 5-38-301(a)(1)(A) (Supp. 2013).



his motion for directed verdict. He argues that while the State proved that appellant had opportunity and motive, it failed to provide additional evidence that would allow the jury to reasonably infer that appellant set the fire.

At trial, Captain Naim Salaam of the Little Rock Fire Department (LRFD) testified that he and his crew were the first to arrive on the scene of the fire. He saw light smoke coming from one of the bedroom windows. The home was secured; the front and back doors were locked. While he did not participate in extinguishing the fire, he did enter the home thereafter. While inside, he saw "a lot of damage in the kitchen[,]" including broken glass that appeared to be from a dining room table. A bunch of clothing on the floor was "definitely where the fire started[,]" but he was unable to ascertain an ignition source—something electrical or flammable in nature—for the fire. Because, he testified, a fire like the one in this case could smolder for a period of time before smoke would be visible, he estimated that the fire may have been burning for "probably up to an hour or so" before smoke was visible. There was not a lot of actual burning damage because there was not enough oxygen in the room for the fire to grow due to the door and window to the room being closed. He noted that there were "a lot" of household items on the floor of other rooms, yet none of those rooms had a fire going.

Captain Kevin Murphy of the LRFD and a member of the crew that entered the home and extinguished the fire, also testified. He corroborated Salaam's testimony that the door to the room containing the smoldering fire was closed. He also testified that the house looked like it had been "ransacked." He had not moved anything in the home, beyond opening the back sliding glass door for ventilation purposes.

Fire Marshall Ryan Baker, also with the LRFD, testified. His job was to determine the origin and cause of a fire. The doorknob to the front door was locked, but not the deadbolt.[13] He testified that the interior of the home was "in disarray" with things, such as chairs and tables, "thrown around[,]" and a trash can in the dining room, which was uncommon. He found a garden tool in the home and later found a television with gouges in it that appeared to be consistent with use of the previously-found garden tool.

Fire Marshall Baker testified that the fire was an incendiary fire—"a human act set fire" that would not have occurred but for human involvement, "period." "[N]o ignitable liquids" were detected as having been used to start the fire; however, accelerants were not necessary to have an incendiary fire. Paper had been used to start this fire. He ruled out all other potential causes for the fire. He estimated damage to the structure at about $15,000.00. After determining that the fire was incendiary, he spoke with Jacqueline, who showed him a number of negative and threatening text messages she had received from appellant between 1:28 p.m. and 2:45 p.m.[14] These text messages helped Baker identify appellant as a suspect for setting the fire.

Jacqueline Booth-Clark testified that she was living with her mother on the date of the fire, as she had moved out of her home on October 2, 2012. While her niece had lived at her house "off and on" in September 2012, she was not living there in October. Only appellant was living in the house between October 3 and October 5, 2012.[15] Only

---

[13]Firefighters had kicked in the door to gain access to the fire.

[14]None of the messages had threats that appellant would burn her house down.

[15]He had been in jail directly prior to these dates.

Jacqueline, appellant, and her niece had keys to the home. She testified that when she arrived at her home a with police escort to obtain some things from her home on the day prior to the day of the fire, the house was not in disarray as it was after the fire; there had been no damage to the home. Specifically, among other things, the trash can containing pieces of her glass dining room table had not been in the dining room area where it was after the fire, but in the driveway; and the garden tool had not been in the home.

There was testimony from appellant's mother, Geraldine McCarther, that on the day of the fire, appellant was with her all day up until 2:40 p.m. She stated that she returned to pick him up at 3:00 p.m.; however, appellant testified that he was at the home all day by himself.

Appellant testified that he sent "a lot of angry text messages," but denied that he set the fire at the home. He asserted that his anger was with the "nasty" way Jacqueline kept the house as he was very neat; however, he admitted to being responsible for at least one section in the home that was "very messy," including empty beer cans and dirty dishes with food still on them. He stated that the door to the "storage" room where the fire began was closed while he was in the home. He admitted to a criminal conviction history including terroristic threatening and multiple counts of battery.

A great deal of this case hinges on testimony, whether that of Fire Marshall Baker, appellant, or any of the other witnesses. While appellant's testimony contradicts that of other witnesses, the jury is free to believe all or part of any witness's testimony and

SLIP OPINION

resolves questions of conflicting testimony and inconsistent evidence.[16] Reconciling conflicts in the testimony and weighing the evidence are matters within the exclusive province of the jury.[17] In assessing the weight of the evidence, a jury may consider and give weight to any false and improbable statements made by an accused in explaining suspicious circumstances.[18] We hold that there was substantial evidence to overcome a motion for directed verdict because there was evidence that appellant had opportunity and motive; had displayed anger towards Jacqueline via text messages; and had acted on that anger by destroying items in the home that were owned by Jacqueline.

Affirmed.

WHITEAKER and HIXSON, JJ., agree.

*Clint Miller*, Deputy Public Defender, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

---

[16]*Woodson v. State*, 2009 Ark. App. 602, at 8, 374 S.W.3d 1, 5 (citing *Gikonyo v. State*, 102 Ark. App. 223, 283 S.W.3d 631 (2008)).

[17]*Id.* (citing *Mitchem v. State*, 96 Ark. App. 78, 238 S.W.3d 623 (2006)).

[18]*Laswell v. State*, 2012 Ark. 201, at 5, 404 S.W.3d at 822 (citing *Sullivan v. State*, 2012 Ark. 74, 386 S.W.3d 507).